CHICAGO TITLE AND TRUST COMPANY, Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant.

No. 76 C 2387.

United States District Court, N. D. Illinois, E. D.

Dec. 14, 1976.

William Levinson, Stiefel, Levinson & Komie, Chicago, Ill., for plaintiff.

Jerome N. Groark, Wayne F. Plaza, Rooks, Pitts, Fullagar & Pitts, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on the motion of the defendant Hartford Fire Insurance Company (Hartford) to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. For the reasons hereinafter stated, the motion shall be granted.

The plaintiff, Chicago Title and Trust Company (CTT), has invoked this court's jurisdiction under 28 U.S.C. § 1332. It alleges that the defendant breached the terms of Hartford insurance policy 83 SMP 876894 when it refused, after notice, to defend CTT in two lawsuits filed in the federal court in Wisconsin. Hartford admits that it did not defend CTT but contends that its inaction was proper. It argues that CTT's instant complaint fails to state a claim as neither of the two complaints filed in Wisconsin contain allegations potentially within the coverage of the insurance agreement.

For a complaint to fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be clear that the plaintiff can prove no set of facts which might entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In the instant case, CTT has incorporated by reference to its com-

plaint copies of the insurance agreement at issue as well as of the two complaints filed in Wisconsin. The court must therefore examine the allegations of these two complaints and compare same with the relevant terms of the Hartford policy to determine whether CTT can prove any facts under its complaint which could entitle CTT to relief.

The two lawsuits filed in Wisconsin were based upon similar operative facts. In the first, *Basore v. Chicago Title and Trust Co.,* 70 C 256, the plaintiff, a commodities broker and the operator of Woodstock Inc. of Miami, Florida, (Woodstock) alleged that he opened a checking account at the National Industrial Bank of Miami, Florida, in the name of Woodstock. He further alleged that in 1969 a purported certified check signed by the plaintiff was drawn on the National Industrial Bank, payable to one Jack Walsh, in the amount of $2.5 million. This check, an alleged forgery, was presented to CTT and deposited into an escrow from which disbursements were then made. Basore alleged that CTT was negligent in accepting the aforesaid forged check as it failed to determine whether the check and the purported certification were genuine; whether the plaintiff d/b/a Woodstock had $2.5 million in the account; whether the signature of Basore was authentic and further that CTT was negligent in not employing acumen exercised by businessmen in like circumstances.

Basore alleged that as a result of the aforesaid negligence and carelessness he sustained substantial damages. He alleged that his reputation was completely destroyed, that he lost his position, that his credit was totally damaged, that he was investigated by the Federal Bureau of Investigation and others thereby causing him and his family great humiliation and shame, that his health was impaired, that he had to seek medical attention and that he sustained wage and business losses. Damages in the amount of $3 million were sought.

The second lawsuit, *Currie v. Chicago Title and Trust Co.,* 71 C 93, was premised upon the same forged check. The plaintiff, employed by Woodstock as a solicitor, salesman and customers' agent, alleged that CTT negligently accepted the forged check and processed it without making inquiry or investigation to determine its authenticity. Currie alleged that CTT was negligent in failing to follow accepted business practices used by the banking profession in similar circumstances. As a result of this negligence, the plaintiff alleged, *inter alia,* that he suffered injury to his good name and national reputation, humiliation and shame, deprivation of public confidence and social intercourse, exposure to public ridicule, loss of employment, loss of credit, and investigation and harassment by the FBI and other law enforcement officials. Currie sought $1.5 million in damages.

Neither of these two lawsuits went to trial. CTT's motion for summary judgment in *Basore* was denied on October 5, 1972. Thereafter, according to CTT, both complaints were dismissed in 1974 for failure to comply with various court orders. However, CTT asserts in the complaint before this court that it was forced to expend some $60,000 in defense of these actions and now seeks to recover this amount from Hartford.* CTT further seeks its costs and fees incurred in the prosecution of the instant litigation.

The insurance agreement at issue, Hartford policy 83 SMP 876894, was in effect until January 1, 1970. It contains a Special Multi-Peril Liability (SMP) endorsement, a Comprehensive General Liability (CGL) endorsement and a Personal Injury Liability (PIL) endorsement. The parties have addressed the issue of the coverage afforded by the PIL endorsement first and the court will likewise.

The PIL endorsement applies to three groups of offenses: (1) false arrest, detention or imprisonment, or malicious prosecution; (2) libel, slander, defamation or violation of right of privacy and (3) wrongful entry or eviction or other invasion of right of private occupancy. As noted, Hartford contends that none of these offenses are

---

* Third-party complaints were not filed in either of the Wisconsin suits.

alleged in either of the two suits filed in Wisconsin against CTT. Plaintiff CTT, on the other hand, asserts that both complaints alleged facts which brought the second group of offenses into issue and therefore triggered Hartford's duty to defend.

With reference to the second group of offenses, the PIL endorsement provides as follows:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein "personal injury") sustained by any person or organization and arising out of one or more of the following offenses:

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

If such offense is committed during the policy period within the United States of America, . . ., and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . .

Hartford asserts that the two Wisconsin complaints clearly do not allege that CTT published or printed any defamatory material about either Basore or Currie and that it was not alleged that CTT either uttered or communicated any defamatory matter about these plaintiffs. Further, Hartford argues that it was not alleged that any employee or agent of CTT published, uttered or communicated any defamatory material to a third person. Finally, it is argued that there are no allegations that CTT or its employees or agents violated any right of privacy.

Hartford states in its memoranda that the two Wisconsin complaints contain allegations of negligence only in the processing of the forged check which was done in CTT's normal course of business. The damages claimed are asserted not to be conduct by CTT for which CTT might be potentially liable. Accordingly, Hartford concludes that it had no duty to defend under the PIL endorsement as this portion of the policy provided coverage to CTT for conduct which caused injury as a result of CTT's commission of the aforementioned specific personal torts, not coverage for protection of claims arising out of the mishandling of a check.

CTT notes that the two complaints allege negligence on the part of CTT resulting in injury to reputation, humiliation, investigation by the FBI and a deprivation of public confidence. Thus while the complaints do not specifically utilize the terms "libel," "slander" and "invasion of right of privacy," they do, according to CTT, set forth precisely the damaging results of these offenses which must follow from publication or an utterance to third persons. CTT further states that the complaints set forth facts such that the plaintiffs could have produced evidence showing publication and dissemination of information by CTT, or others, at trial as a result of the alleged negligence. It is therefore argued that Hartford had a duty to defend under the policy.

CTT also argues that the PIL endorsement does not indicate that Hartford was affording coverage for libel, slander, or an invasion of privacy by CTT alone. As the endorsement states that Hartford will pay all sums which CTT shall become legally obligated to pay because of injury sustained by any person or organization and as CTT could have been held liable for the commission of these offenses by others, CTT contends that Hartford breached its duty to defend under this endorsement.

■ The parties agree that Illinois law controls this cause. They further agree that the issue for this court to decide is whether the plaintiffs in the lawsuits in

Wisconsin alleged facts which brought those cases within, or potentially within, the coverage of Hartford's policy. The potential for coverage by Hartford is enough to trigger the duty to defend. *Colton v. Swain,* 527 F.2d 296, 302–03 (7th Cir. 1975) and cases cited.

■ Initially, the court notes that the two Wisconsin lawsuits were filed in the federal district court. Thus plaintiffs' failure to specifically state that the crux of their actions was libel, slander, defamation, or violation of privacy cannot defeat the duty of Hartford under the PIL endorsement. Rule 8 of the Federal Rules of Civil Procedure merely requires "notice" pleading.

■ Nonetheless the court is of the opinion that Hartford had no duty to defend CTT under the PIL endorsement. The pleadings filed in the Wisconsin federal cases do not give notice of facts potentially within the terms of this provision of the policy. There were no allegations of the elements of the torts at issue. There were no allegations that CTT did or said something involving plaintiffs' reputations or good names and that same was communicated to third persons. Rather, Basore and Currie alleged that CTT was negligent in its handling of a $2.5 million check.

While it may be true that some of the injuries claimed correspond to those which would result from an action in libel or in slander, the court does not feel that this is sufficient to invoke Hartford's duty to defend CTT. Similarly, if this were so, a plaintiff could seek damages for humiliation as a result of an automobile accident and CTT could successfully argue that there was a duty to defend under the PIL endorsement. Such a construction was clearly not intended by the parties and the court cannot read this policy provision with such a strained interpretation.

■ CTT further asserts that Hartford had a duty to defend under the PIL endorsement as CTT could have been held liable for the commission of these torts by others as a result of CTT's negligence.

Once again, the court is of the opinion that the plaintiff seeks to impose a strained interpretation on this provision of the policy. It clearly provides a duty to defend when CTT or its agents allegedly committed offenses enumerated in the PIL endorsement. There is no coverage provided for acts done by third parties such as the FBI. *Simmons Refining Company v. Royal-Globe Insurance Company,* 543 F.2d 1195, 1197–98 (7th Cir. 1976).

CTT further argues that Hartford breached its duty to defend under the SMP and CGL endorsements as Basore alleged that CTT's negligence caused injury to his health and he was forced to seek medical attention. Hartford contends that this claimed injury does not fall within the coverage provided by these endorsements. It asserts that there was no bodily harm as required and further that there was no occurrence.

Under the terms of the CGL endorsement Hartford agreed that it would:

[P]ay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury. . . .

Identical language appears in the SMP endorsement. Bodily injury is defined in the policy as "bodily injury, sickness or disease sustained by any person." An occurrence is defined in the policy as "an accident including injurious exposure to conditions, which results, during the policy period, in bodily injury . . . neither expected nor intended from the standpoint of the insured."

At issue initially is whether Basore alleged bodily injury as that term is used in the CGL and SMP endorsements. The court is of the opinion that he did at least to the extent that facts potentially within the

Hartford policy were stated. The court is further of the opinion, however, that there was no coverage afforded CTT as a result of this allegation by Basore as the alleged bodily harm did not arise from an occurrence.

 There is an occurrence under the law when it is alleged that the actions of the insured result in injury which was unexpected. *Koehring Co. v. American Automobile Insurance Co.,* 353 F.2d 993 (7th Cir. 1965). In the instant situation Basore alleged mere negligent business conduct. This was insufficient to trigger Hartford's duty to defend. *Simmons Refining Company v. Royal-Globe Insurance Company, supra.*

For the reasons stated, it is therefore ordered that Hartford's motion to dismiss the complaint for failure to state a claim upon which relief can be granted shall be, and the same is hereby, granted.