WESTERN CASUALTY & SURETY COMPANY, Plaintiff,

v.

Sally WAISANEN and Charles H. Waisanen; Security Mutual Life Insurance Company; the City of Deadwood, a municipal corporation; and Rural Security Life Insurance Company, Defendants.

Civ. No. 85-5192.

United States District Court, D. South Dakota, W.D.

Feb. 12, 1987.

Edward C. Carpenter, Rapid City, S.D., for plaintiff.

Wayne F. Gilbert, Rapid City, S.D., for City of Deadwood.

Dennis Finch, Rapid City, S.D., for Waisanens.

Allen G. Nelson, Rapid City, S.D., for Sec. Mut. Life.

Tom Fritz, Rapid City, S.D., for Rural Sec. Life.

## MEMORANDUM OPINION

BATTEY, District Judge.

### I

### PROCEDURAL HISTORY

The plaintiff, Western Casualty & Surety Company (hereafter referred to as Western), is the insurer of the defendant, City of Deadwood (hereafter referred to as the City), under a standard and an umbrella liability insurance policy. In this declaratory judgment action Western seeks to determine whether it is obligated to defend a South Dakota state court action brought against the City by the defendants, Sally and Charles Waisanen. The remaining defendants have been joined as persons who have or claim an interest which would be affected by the judgment in this case.

All parties have stipulated that this Court may base its decision upon the briefs and depositions submitted and entered on the record.

### II

### FACTS

For several years prior to October 1984, the defendant Rural Security Life Insurance (hereafter called Rural), provided

group health coverage for the employees of the City and their dependents. Because it was operating in the red, the City had adopted a practice of not paying its bills until funds became available. By virtue of this practice the City had been habitually late in its payment of the monthly premiums on its group health policy with Rural. Rural went along with this practice for a number of years until October 1984 when it canceled the policy for nonpayment of the September premium.

At the time of the cancellation, the defendant Sally Waisanen—whose husband the defendant Charles H. Waisanen, was then employed by the City—was suffering from and undergoing treatment for cancer. Following cancellation of the group health insurance, Waisanens sued the City for allowing the insurance to lapse. The City tendered defense of the lawsuit to Western. Western declined on the following grounds:

1. That the events which precipitated the state court action did not constitute an "occurrence" as defined in the policies.

2. That no "bodily injury" or "personal injury" had resulted as required under those policies.

## III

### DISCUSSION

■ In the resolution of this matter the liability insurer's duty to defend its insured is measured by the terms of the policies and the pleadings. *Rolette County v. Western Casualty and Surety Company,* 452 F.Supp. 125 (D.N.D.1978); Appleman, *Insurance Law and Practice,* § 4863 (Berdal ed., Supp.1986). The Court in addition has the stipulation of fact and the depositions on file.

Since this is a diversity action it is the Court's duty to ascertain the law of the State of South Dakota and apply it to the facts of the case. *St. Paul Fire & Marine Insurance Co. v. Northern Grain Co.,* 365 F.2d 361, 368 (8th Cir., 1966)

The applicable rule to be applied to the construction of insurance policies was set forth by the South Dakota Supreme Court in the case of *Grandpre v. Northwestern National Life Insurance Company,* 261 N.W.2d 804, 807 (S.D.1977):

[A] Contract of Insurance is to be construed liberally in favor of insured and strictly against the insurer only when the language of the contract is ambiguous and susceptible to more than one interpretation. Thus, the insurance contract's language must be construed according to its plain and ordinary meaning. It does not permit the Court to make a forced construction or a new contract for the parties.

### A. "Occurrence"

The pertinent coverage section of the Western standard policy reads as follows:

[Western] will pay in behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of

A. bodily injury, or

B. property damage

to which this insurance applies, caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent,....

*"Occurrence"* is defined as follows:

[A]n accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The language of the umbrella policy is identical except that "personal injury" is substituted for "bodily injury."

As pointed out by Western's counsel, "accident" is synonymous with "occurrence" under the policy definition.

Western contends:

1. That Waisanen's complaint in the state court action does not allege an oc-

currence as above defined. *Citing, Taylor v. Imperial Casualty & Indemnity Company,* [82 S.D. 298] 144 N.W.2d 856, 858 (S.D.1966);

2. That allegations of "mere negligent business conduct" do not constitute an occurrence. *Citing, Chicago Title & Trust Company,* 424 F.Supp. 830, 835 (M.E. [N.D.] Ill.1976); and

3. That the City admits that its failure to timely pay the annual premium was intentional and therefore such conduct cannot constitute an occurrence. *Citing, Rolette County v. Western Casualty & Surety Company,* 452 F.Supp. 125, 129–30 (D.N.D.1978).

The stipulation of the parties to this action incorporates the pretrial depositions taken in this case as well as the complaint and its amendments filed in the state court action. Thus, this Court may consider both the allegation of the state court pleadings, and the facts giving rise to the state court action as revealed by the pretrial depositions in this case.

The parties agree that the failure of the City to timely pay the September 1984 premium of its employees' group health policy with Rural was an intentional act.

*Taylor v. Imperial Casualty & Indemnity Company, supra,* arose out of damage to property of an adjoining landowner caused by gasoline leaking from the insured's underground storage tanks over a period of time. The policy covered "... injury to property ... caused by accident." The policy did not contain a definition of "accident." Thus, left to its own means, the court defined accident as "an undesigned, sudden and unexpected *event,* usually of an afflictive nature or unfortunate character, and often accompanied by a manifestation of force". *Id.* 144 N.W.2d at 858. (Emphasis supplied). Taken out of context, this definition appears to support Western's position that the character of the cause, as opposed to consequences, is the test. However, in resolving the coverage question, the court took the opposite view and adopted the following rule:

Injuries are caused by accident *according to the quality of the result* rather than the quality of the causes. *Id.* at 859. (Emphasis supplied).

In support of this rule, the court cited two of its prior decisions, *Johnson v. LaBolt Oil Company,* 62 S.D. 391, 252 N.W. 869, 871 (1934) and *Campbell v. City of Chamberlain,* 78 S.D. 245, 100 N.W.2d 707 (1960) and the oft-cited case of *Messersmith v. American Fidelity Company,* 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876 (N.Y. 1921).

In *Johnson* and *Campbell, supra,* the South Dakota Supreme Court had before it the question of whether the injury under consideration was an "injury by accident" and therefore compensable under the state's Worker's Compensation Law. In *Johnson,* the worker suffered a hernia due to the strain of lifting a heavy timber. In the *Campbell* case the worker suffered a fatal heart attack caused by extreme exertion on his part while repairing a break in a city water main during extremely cold weather. In both cases the court held that the worker had suffered a compensable "injury by accident." *Campbell* reiterated the holding in *Johnson* to the effect that to constitute an "injury by accident" within the meaning of the statute it is sufficient that the injury itself is unexpected, and that it is not necessary that the cause of the injury should be untoward and unexpected, occurring without design. In *Messersmith,* the plaintiff sued upon the defendant's policy of insurance, indemnifying him against liability for injuries accidentally suffered by anyone through the maintenance or use of his automobile. The defense was that, in violation of state statute, the automobile was driven by an infant under the age of eighteen who was not accompanied either by the owner or by a duly licensed chauffeur; that this was done with the plaintiff's knowledge and under his directions; and that the accident was directly caused by the improper and negligent conduct of the said infant while thus violating the law. In holding that there was coverage, Justice Cardozo stated:

The plaintiff in intrusting his car to a youth under eighteen, did not desire or intend that there should be an injury to travelers. The act of so intrusting it was wilful, but not the ensuing conduct of the custodian, through which injury resulted. Indeed, the violation of the statute would have been the same though the driver's age had been unknown. What was wilful was not actionable, except as it became so in the sequel, through what was unintended or fortuitous.

Injuries are accidental or the opposite, for the purpose of indemnity, *according to quality of the results rather than the quality of the causes.* The field of exclusion would be indefinitely expanded, if the defendant's [the insurer's] argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is wilful, when viewed in isolation and irrespective of its consequences.

In each of these cases cited in *Taylor,* the conduct of the insured causing or contributing to the consequences was intentional, i.e.—lifting a heavy timber (*Johnson*), extreme exertion in extremely cold weather (*Campbell*) and intrusting an automobile to a person under eighteen years of age and allowing him to drive it unaccompanied by the owner or a duly licensed chauffeur (*Messersmith*). As pointed out in those cases the result of such conduct—the hernia (*Johnson*), the heart attack (*Campbell*) and the auto accident (*Messersmith*) was not intended or expected by the insured.

In *Taylor,* the court found that the leaks in the underground tank of the insured and the escape and seepage of gasoline were the result of negligence, but that the consequent property damage was unintended and not the probable and natural consequence of the negligence. Based upon these findings, it held that the property damage was caused by accident within the meaning of that term.

On two subsequent occasions the South Dakota Supreme Court has cited *Taylor* as standing for the proposition that injuries are caused by accident according to the quality of the result rather than the quality of the causes. *King v. Johnson Bros. Construction Co.,* 83 S.D. 69, 155 N.W.2d 183, 185 (1967); *Wold v. Meilman Food Industries, Inc.,* 269 N.W.2d 112, 116 (S.D. 1978). Although *King* and *Meilman* involved the interpretation of the phrase, "by accident" as construed in the existing worker's compensation law, the Court finds such cases instructive in this case.

In *St. Paul Fire and Marine Insurance Co. v. Northern Grain Co.,* 365 F.2d 361, 363, 365 (8th Cir.1966), a diversity action governed by South Dakota law, the coverage clause of the liability policy provided:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, * *, caused by accident.

In deciding that crop damage stemming from the sale of defective wheat seed by the insured was "caused by accident" within the terms of that provision the court held:

> In light of the broad and liberal judicial interpretation of the term "accident" as used in general liability policies, particularly in a policy which, as is true here, insures against "Products Hazard," we are of the firm view, and so hold, that the occurrence under consideration satisfies the requirement that the claimed damages were caused by accident. *The result flowing from the sale of the improper seed wheat was an unexpected, unforeseen and fortuitous event.* (Emphasis added).

In another diversity case calling for application of South Dakota law, this Court considered a coverage question in the context of a policy definition of "occurrence" identical to the one contained in Western's policies in this case. *Triple U Enterprises, Inc. v. New Hampshire Insurance Company,* 576 F.Supp. 798, 808 (S.D.1983). This court in finding that there was coverage held:

As used in general comprehensive liability policies, "occurrence" connotes a broader coverage than "accident." 7 A.J. Appleman, *Insurance Law and Practice* § 4493, p. 49 (1979). The definition of "occurrence" eliminates any need for an exact finding of the cause of the alleged damage, but only requires that such damage is neither expected or intended from the standpoint of the insured. *Id.*

There can be no question but that the alleged damage to the calves born in the instant case was neither expected nor intended from the standpoint of Plaintiffs.

■ Although the injury in *Taylor,* was caused by negligence, the above-cited cases make it clear that coverage under the standard policy definition of "occurrence" in this case would not be denied under South Dakota law simply because intentional conduct constituted the underlying conduct which produced the intended result. Thus, *Rolette* does not apply and coverage in this case depends upon whether the resultant injury was either intended or expected by the City.

■ From the facts revealed by the depositions taken in this case, it is clear that the City did not intend that its health policies with Rural be canceled and coverage terminated when it failed to pay the September 1984 premium within the 31 day grace period provided in the policies. Rather the cancellation came about as a result of the City's long-established practice of waiting to pay its bills until revenue became available—a practice that had resulted in a chronic pattern of late payment of the monthly premiums on these policies. Prior to the September 1984 default, the City's Finance Officer, Joe Brotsky, had never received a complaint about late payment of premiums from either Western or any of its agents. (Brotsky deposition, p. 58) In fact the City forwarded the September 1984 premium to Rural on October 17, 1984, when money became available. (Brotsky deposition p. 12–13). In addition it forwarded the October 1984 payment on October 30, 1984, immediately following a telephone call from Rural's local sales agent, Jerry Johnson. (Brotsky deposition p. 14)

The question remaining for consideration is whether the cancellation of its health policies with Rural was "expected" by the City. In making this determination the courts have been reluctant to adopt a totally subjective test which would place complete control of the coverage question in the hands of the insured. To avoid this extreme and at the same time trying to not nullify the purpose for purchasing insurance protection, the courts have injected varying degrees of objectivity into the test. This has taken the form of "foreseeability" of the result flowing from certain conduct. The tests devised have ranged from "natural and probable consequences" to "reasonably foreseeable" to "substantial probability."

■ This court feels that the test of "substantial probability" best serves the competing interests of the insured and the insurer as is pointed in the well-reasoned decision of the court in *City of Carter Lake v. Aetna Casualty and Surety Company,* 604 F.2d 1052, 1055–1059 (8th Cir. 1979). (The policy under consideration there contained the same standard definition of "occurrence" as the present case.)

An interpretation of the word "accident" as used in this type of comprehensive general liability policy which is consistent with the results reached in most of the cases confronting the issue, if not the broad language sometimes employed, is not to look at the question of whether a result is "expected" as a matter of probability. We reject the argument that a result is expected as that term is used in insurance policies simply because it was reasonably foreseeable. The reasonable expectation of an insured in securing a comprehensive general liability policy is that it will cover some negligent acts. It does not follow, however, that because the policy covers some negligent acts it must cover all negligent acts. An insured need not know to a virtual cer-

tainty that a result will follow its acts or omissions for the result to be expected. (citations omitted). Rather, each case must be determined by an examination of the totality of the circumstances. For the purpose of the exclusionary clause in an insurance policy the word "expected" denotes that the actor knew or should have known that there was a *substantial probability* that certain consequences will result from his actions. (citations omitted) *Id.* at 1058–1059.

In further differentiating between "reasonably foreseeable" and "substantial probability" the court (n. 4 at 1059) went on to explain:

The difference between "reasonably foreseeable" and "substantial probability" is the degree of expectability. A result is reasonably foreseeable if there are indications which would lead a reasonably prudent man to know that the particular results could follow from his acts. Substantial probability is more than this. The indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are *highly likely to occur.* (Emphasis added).

The court in that case was considering negligent conduct. However, the rationale applies equally well to a case involving intentional conduct—as in the present case.

Although the South Dakota Supreme Court in *Taylor v. Imperial Casualty and Indemnity Company, supra,* made reference to "probable and natural consequences," it did so in the context of distinguishing that case from those denying coverage in instances of a long continuing nuisance.

Unlike the *Clark v. London & Lancashire Indemnity Co.* case, where the harmful condition had been created by the insured who knowingly permitted the condition to exist, the consequences here resulting from the negligence of General Tire and Rubber Company were unintended and not the probable and natural consequences of the negligence. *Vappi & Co. v. Aetna Casualty and Surety Company,* 348 Mass. 427, 204 N.E.2d 273 [1965]; *Maryland Casualty Company v. Mitchell,* 5 Cir. [1963], 222 F.2d 37; *Corbetta Construction Co. v. Michigan Mutual Liability Co.,* 20 A.D.2d 375, 247 N.Y.S.2d 288, [1964], affd. 15 N.Y.2d 888, 258 N.Y.S.2d 423, 206 N.E.2d 357 [1965].; 144 N.W.2d at 859. None of the cited cases stand for the proposition that "probable and natural consequences" is the standard by which coverage is to be determined.

In the cited case of *Vappi & Co. v. Aetna Casualty and Surety Company,* 348 Mass. 427, 204 N.E.2d 273 at 276 the court held: "Unintended or unforeseen consequences of reckless or negligent acts, and even of intentional acts, at least if not undertaken 'with malice or intent to injure' the person or property hurt may be within the definition of 'accident.'"

In the cited case of *Corbetta Construction Co. v. Michigan Mutual Liability Co.,* 247 N.Y.S.2d 288 at 292, 293 the court held that the injury viewed from the insured's position was not foreseen and not intended and since it was the result of the insured's negligence it constituted an accident within the terms of defendant's policy.

In the cited case (322 F.2d 37 at 40 (5th Cir.1963)) *Maryland Casualty Company v. Mitchell,* the court held:

Within the meaning of the policy involved here, a petition would allege an injury "caused by accident" if it alleged facts showing that injury was not in fact intended by the defendant, in the sense that he acted for the purpose of causing injury or that the injury was so *substantially certain to result* from the act that the defendant, knowing it would occur, can be said to have intended it in fact. (Emphasis added).

If faced squarely with determining the standard by which an insured should be held to have expected certain results from his conduct under the standard policy definition of "occurrence," this court feels that the South Dakota Supreme Court would

adopt the test of "substantial probability" as set forth in *City of Carter Lake v. Aetna Casualty and Surety Company.*

Applying the "substantial probability" standard to the facts of this case the Court concludes that Rural's cancellation of its health policy with the City was not "expected" by the City. Had the cancellation occurred at the first instance of untimely payment of the monthly premium, or following an express warning that continued late payment would result in cancellation, the cancellation could be said to have been "expected" by the City. By contrast, the City was lulled into a false sense of security by Rural's continual acceptance of late payments over a period of years without objection. Not only was the cancellation for untimely payment of the September 1984 premium unexpected by the City, it came as a complete surprise. The situation in this case is tantamount to that in contract cases where a party to the contract is deemed to have waived the "time is of the essence" provision by continual acceptance of late payments.

■ Western's counsel also argues that the conduct of the City was "mere negligent business conduct" and thus does not qualify as an "occurrence." If the cases announcing this rule intend that a different standard of foreseeability should apply to situations involving a business or commercial transaction, this arbitrary distinction has no logical basis. This court feels that both business and non-business transactions should be judged by the same standards and therefore rejects any such arbitrary distinction.

For the above reasons this court holds that the facts giving rise to the state court action qualify as an "occurrence" under the City's standard and umbrella liability policies with Western.

### B. Bodily Injury

Western also argues that the allegations of the Waisanens do not set forth a claim for "bodily injury" as defined in the general liability policy.

"Bodily injury" is defined in the comprehensive general liability policy as follows:

"Bodily injury" means bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

Western again cites *Rolette,* as controlling. However, *Rolette* is distinguishable. In *Rolette,* the underlying complaint alleged that the plaintiffs had been embarrassed, humiliated, and suffered great mental anguish and emotional distress. Coverage was denied because there had been no allegations of physical harm. *Rolette* at 130.

■ In the present case, Sally Waisanen alleges that she has suffered high blood pressure in addition to emotional disturbances. Even if groundless, the allegation of high blood pressure is deemed by this court to be an allegation of physical harm, i.e., bodily injury, and therefore the Western has a duty to defend the underlying suit against the City of Deadwood.

### C. Personal Injury

"Personal injury" is defined in the umbrella policy as follows:

"Personal injury" means:

(1) Bodily injury, sickness, disease, disability, or shock, including death arising therefrom, and, if arising out of the foregoing, mental anguish and mental injury; and

\*     \*     \*     \*     \*     \*

caused by an occurrence occurring during the policy period.

Western asserts that the municipality endorsement contained within the umbrella policy does not provide coverage for disability, shock, mental anguish, or mental injury. The municipality endorsement in pertinent part reads as follows:

It is further agreed that this policy does not apply, *except insofar as coverage is provided in the underlying insurance,* as set forth in the schedule of the underlying insurance to:

(2) personal injury arising out of any of the following:

\* \* \* \* \* \*

(e) disability, shock, mental anguish, or mental injury.

■ Even if the Western's contention were valid in that the municipality endorsement excludes coverage, the same endorsement does provide coverage to the extent that coverage is provided in the underlying insurance. The comprehensive general liability policy is the underlying insurance and accordingly the exclusions relied upon by Western do not apply.

## CONCLUSIONS

Given the stipulations of the parties on the record considered as a whole, the allegations of the underlying complaint do set forth an "occurrence" which did result in both "bodily injury" and "personal injury" as defined in the applicable insurance policies.

Therefore, it is the direction of this Court that Western is obligated to defend the state court action under the terms of its liability policies.