AMERICAN UNIVERSAL INSURANCE COMPANY; and Minnesota Mutual Fire and Casualty Company, Plaintiffs,

v.

WHITEWOOD CUSTOM TREATERS, INC., a corporation; Merlin Aker; and Darlene Aker, Defendants.

Civ. No. 88–5029.

United States District Court, D. South Dakota, W.D.

Feb. 24, 1989.

William G. Porter, Patricia Meyers, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, S.D., for plaintiffs.

Ronald Clabaugh, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S.D., for defendant Akers.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

On November 7, 1986, a negligence action was filed in circuit court, Eighth Judicial Circuit, Lawrence County, South Dakota, by Merlin Aker and Darlene Aker (Akers) against Whitewood Custom Treaters (Whitewood). An amended complaint was filed on August 18, 1988. The amended complaint alleged three causes of action: Count I, negligence; Count II, nuisance; and Count III, trespass. A loss of consortium claim was included in Count I on behalf of Merlin Aker. More specifically, it was alleged that Whitewood negligently allowed hazardous waste to be discharged from Whitewood's treatment plant, causing damage to Akers' adjoining property and causing Darlene Aker to suffer health injuries. In addition to negligence, Akers' complaint alleged nuisance and trespass by the deposit of chromated copper arsenate upon Akers' land.

Minnesota Mutual and American Universal filed this declaratory judgment action seeking a declaration of their rights and obligations under their insurance policies as related to (1) the duty to defend the state court action and (2) liability coverage under the policy provisions. Whitewood did not file an answer to the declaratory judgment action. Akers have intervened, asserting that there is both a duty to defend and liability coverage.

Minnesota Mutual issued a General Automobile Policy to Whitewood covering the period from June 1, 1982, to January 24, 1983. The Minnesota Mutual policy also included a Broad Form Comprehensive Liability Endorsement. Akers assert coverage under both the basic policy and the endorsement.

American Universal issued a Special Businessowner Policy to Whitewood covering the periods from May 15, 1983, to March 5, 1984, and again from May 15, 1984, to May 15, 1984.

The case is now before the Court on cross motions for summary judgment. Resolution of this matter involves the construction of the insurance contracts, the language of which is not in dispute. The case is appropriate for summary judgment. The Court has diversity jurisdiction under 28 U.S.C. § 1332.

## SUMMARY JUDGMENT STANDARD

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 106 S.Ct. 2553. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Jordan v. Hanks*, 683 F.Supp. 1298, 1299 (W.D.Mo.1988).

## SUMMARY OF ARGUMENTS

On January 17, 1982, five months prior to the effective date of the Minnesota Mutual policy, Whitewood's frozen pipes broke, discharging chemicals, including chromated copper arsenate, onto Akers' land. Minnesota Mutual contends there is no insurance coverage under its policy because there was not a sudden and accidental discharge of pollutants during the policy period. In response Akers claim that there is no requirement that the polluting event occur within the policy period. Akers further contend that because the 1982 chemical spill was not cleaned up, Darlene Aker was exposed on a continuous and regular basis to toxic chemicals for a period of time extending into the policy period and that this exposure constitutes a covered "occurrence" under the policy provisions.

American Universal's factual situation is different from Minnesota Mutual's in that during American Universal's policy period frozen pipes at Whitewood's chemical treatment plant again broke, spilling concentrated chromated copper arsenate onto Akers' land. Akers accordingly claim that there is coverage for damages caused by this spill. Akers also argue that because the prior spills were not cleaned up, Darlene Aker was continuously and repeatedly exposed to such chemicals and that this exposure constitutes a covered occurrence under the policy provisions. In response, American Universal contends that Darlene Aker's personal injuries were manifested prior to the inception of its insurance policy and therefore, American Universal's coverage is not triggered. Additionally, American Universal joins in Minnesota Mutual's argument that the injury to Darlene Aker does not constitute an occurrence under the policy. The Court will address each argument separately in accordance with the summary judgment standard.

DISCUSSION

## I

### THE POLICY PROVISIONS

(a)

### Minnesota Mutual—General Automobile Liability Policy

The coverage provisions of the Minnesota Mutual basic policy provided:

I. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, ...

The policy defines "occurrence" as follows:

"**occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured.**

The provision relating to the pollution exclusion provided:

This insurance does not apply:

. . . . .

(f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, releases or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(b)

### Minnesota Mutual—Comprehensive Liability Endorsement

Attached to the Minnesota Mutual policy referred to in paragraph I(a) above, there was an endorsement entitled "BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT."

The coverage provision of the general liability endorsement provided:

II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE

(A) The company will pay on behalf of the **insured** all sums which the insured shall become legally obligated to pay as damages because of **personal injury** ... to which this insurance applies, sustained by any person or organization, and arising out of the conduct of the **named insured's business**, ... and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, ...

. . . . .

(D) Additional Definitions

. . . . .

"**Personal injury**" means injury arising out of one or more of the following offenses committed during the policy period:

. . . . .

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

. . . . .

III. PREMISES MEDICAL PAYMENTS COVERAGE

The company will pay to or for each person who sustains **bodily injury** caused by accident all reasonable **medical expense** incurred within one year from the date of the accident on account of such **bodily injury**, provided such **bodily injury** arises out of (a)

a condition in the **insured premises,** or (b) operations with respect to which the **named insured** is afforded coverage for bodily injury liability under the policy.

■ Akers' position is that since there is no pollution exclusion set forth in the Broad Form Liability Endorsement (as was set forth in the basic policy), the Broad Form Endorsement applies to afford coverage. Thus there is both a duty to defend and a duty to afford coverage under the policy. The Court does not agree. The Court finds that the pollution exclusion of the basic policy carries over into the endorsement as fully as if set forth therein.

The Broad Form General Liability Endorsement (endorsement) affords comprehensive liability insurance to the insured under the basic policy, specifically stating on the face of the endorsement: "This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: Comprehensive General Liability Insurance."

It is the Court's opinion that all exclusions set forth in the basic policy, which would include Exclusion (f) relating to the discharge, dispersal, release, or escape of toxic chemicals, are carried forward and must be construed as a part of the general liability insurance endorsement unless otherwise removed by the plain terms of the endorsement. If one examines the structure of the endorsement as well as the wording itself, one can come to no other logical conclusion. For example, comparing Coverages I–Contractual Liability and VI–Property Damage Liability, one can see the method under which the endorsement carries forward exclusions found in the basic policy, as follows:

I. CONTRACTUAL LIABILITY COVERAGE

.        .        .        .        .

(C) The following exclusions applicable to Coverage A (Bodily Injury) and B (Property Damage) do not apply to this Contractual Liability Coverage: (b), (c), (2), (d) and (e).

VI. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (including Completed Operations)

The insurance for property damage liability applies, subject to the following additional provisions:

(A) Exclusions (k) and (o) are replaced by the following: ...

Accordingly, if the endorsement as to any coverage changes the exclusion in the basic policy, the exclusions of the main policy are referred to and changed by specific wording within the endorsement. No such reference was made as to Exclusion (f) of Coverage I of the basic policy. It logically follows that in the absence of any deleting or altering language as to Exclusion (f), the exclusion remains unaltered and therefore is carried forward without change. There being no change in the pollution exclusion in the Broad Form Liability Endorsement, this Court's finding with reference to the basic policy as relates to Exclusion (f) applies in like manner to the endorsement.

(c)

American Universal

The coverage provision of the American Universal policy provides in part:

SECTION II COMPREHENSIVE BUSINESS LIABILITY

COVERAGE E—BUSINESS LIABILITY:

The Company will pay on behalf of the **insured** all sums which the insured shall become legally obligated to pay as damages because of **bodily injury, property damage** or **personal injury** caused by an **occurrence** to which this insurance applies.

RIGHT AND DUTY TO DEFEND:

The Company shall have the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false or fraudulent....

The policy defines "occurrence" as:

[A]n accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property dam-**

**age** neither expected nor intended from the standpoint of the insured ...

The provision relating to the pollution exclusion is as follows:

Under Coverage E this policy does not apply:

5. to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The policy provisions of the two companies are substantially the same. The policies cover occurrences which are unexpected or unintended from the standpoint of the insured and which may occur suddenly or over a period of time (continuously and repeatedly). Pollution and contaminants are excluded unless their discharge, dispersal, release, or escape is sudden or accidental. "Accident" is synonymous with "occurrence."

The Court does not find ambiguity in these provisions as relates to the pollution provision. In the case of intentional acts, the South Dakota Supreme Court has held the provisions unambiguous in their exclusion of intentional acts. *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366, 370 (S.D. 1987) (assault by police officers was intentional; therefore, coverage did not exist). As with most contract provisions, the difficulty with unambiguous provisions lies not in their interpretation but in their application.

## II

## ISSUES

Two separate issues are presented:

(1) Do either or both insurers have a duty to defend plaintiffs' alleged cause of action?

(2) Are either or both insurers liable under their respective policies of insurance?

## III

## DUTY TO DEFEND

A liability insurer's duty to defend its insured is measured by the terms of the policies and the pleadings. Annot., 50 A.L. R.2d 458, 465 (1956); *see also Hawkeye Security Ins. Co. v. Clifford*, 366 N.W.2d 489 (S.D.1985) citing *U.S. Fidelity & Guaranty Co. v. Lewis A. Roser Co.*, 585 F.2d 932 (8th Cir.1978) as follows:

It is the general rule that the duty of an insurance company to defend its insured is to be determined by the allegations of the complaint or petition in the action brought against the insured. An insurer must defend its insured if the pleadings in the action against the insured allege facts which, if established, would support a recovery under the policy.

Accordingly, in order to determine whether there is a duty upon Minnesota Mutual or American Universal to defend Whitewood in the underlying state court action brought by Akers, it is necessary to look at the allegations in the state court amended complaint and other evidence of record where appropriate. *Waste Management of Carolinas v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986).

*Hawkeye Security* further instructs that the duty to defend and the duty to pay are severable and independent duties and the duty to defend is much broader than the duty to pay. Further, "if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend. The burden of showing no duty to defend rests on the insurer who must show the claim clearly falls outside of policy coverage." *Bayer v. Employers Reinsurance Corp.*, 383 N.W.2d 858 (S.D.1986) citing *Hawkeye Security* and *U.S. Fidelity & Guaranty Co.* The Court now turns to the amended complaint as filed in the state court action.

## IV

## THE AMENDED COMPLAINT

The amended complaint filed by Akers in state court alleges in part:

## COUNT I

### NEGLIGENCE

3. That from 1981 through 1985 the Defendant Whitewood Custom Treaters, Inc., negligently allowed hazardous waste to be discharged from said treatment plant, the hazards of which first became known to Plaintiffs in 1985.

4. In about January of 1982, Defendant Whitewood Custom Treaters, Inc., negligently allowed hazardous waste consisting of, among other things, chromated copper arsenate, to be discharged from said plant when frozen pipes broke causing large amounts of the hazardous waste to be suddenly discharged from the treatment plant, which discharge flowed onto Plaintiffs' property.

5. That in about November 1984, Defendant Whitewood Custom Treaters, Inc., negligently allowed hazardous waste to be discharged from said treatment plant when a line froze and broke allowing concentrated amounts of chomated [sic] copper arsenate to suddenly be discharged from the plant, which discharge flowed upon Plaintiffs' property.

## COUNT II

### NUISANCE

2. That from about 1981 through 1985 the Defendant's storage of chromated copper arsenate constituted an abnormally dangerous activity, the dangers of which first became known to Plaintiffs in 1985.

3. That said abnormally dangerous activity annoyed, injured, and endangered the comfort, repose, and health of the Plaintiff Darlene Aker and her family.

5. In about January of 1982 and again in about November of 1984, Defendant permitted and allowed said chromated copper arsenate to suddenly and without warning escape and flow from the property onto Plaintiffs' property, thereby injuring and endangering the comfort, repose, and health of Plaintiff Darlene Aker and her family.

## COUNT III

### TRESPASS

2. That from about 1981 through 1985, the Defendant Whitewood Custom Treaters, Inc., negligently caused or permitted chromated copper arsenate, or its chemical components, to enter Plaintiffs' land.

3. That the Defendant Whitewood Custom Treaters, Inc., recklessly caused or permitted chromated copper arsenate or its chemical components to enter Plaintiffs' land.

4. That the Defendant Whitewood Custom Treaters, Inc.'s storage of chromated copper arsenate was an abnormally dangerous activity, and Defendant negligently or recklessly caused or permitted said substance to enter Plaintiffs' land. Plaintiffs first became aware of the danger of the chromated copper arsenate in 1985.

5. That in about January of 1982 and again in November 1984, Defendant negligently caused chromated copper arsenate to flow from its treatment plant onto Plaintiffs' property, thereby entering Plaintiffs' land and air space, proximately resulting in injuries to Darlene Aker as alleged herein.

In examining the three counts of the complaint and following the methodology set forth in *Hawkeye Security*, this Court first must determine whether it is clear or arguably appears from the face of the pleadings that the alleged claim, if true, falls within the policy coverage. If so, the insurer must defend. If the pleadings indicate that the insurer must defend, the Supreme Court of South Dakota instructs that the review then ends, even though the pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent. *Hawkeye Security* at 492.

This Court's examination, however, does not stop with the pleadings. Fed.R.Civ.P. 56(c) permits, indeed instructs this Court to decide the issue upon more than the exami-

nation of the pleadings. The scope of the Federal Rules of Civil Procedure govern the procedure in the United States District Courts. Fed.R.Civ.P. 1.

## V

## CONTRACT PROVISIONS

### (a)

### The Pollution Exclusion Clause

■ Both sides in this case have cited cases which are helpful in understanding that the nature and purpose of the pollution exclusion clause is to prevent businesses from actively polluting the environment as a regular part of their business operation and obtaining insurance to protect themselves against liability for the harm what would result. *See, e.g., City of Milwaukee v. Allied Smelting Corp.*, 117 Wis. 2d 377, 344 N.W.2d 523, 525–27 (Ct.App. 1983) (pollution exclusion clause relieved insurance company from coverage for property damage which arose from continuous discharge of acids into city sewer system because discharge was not sudden and accidental); *American States Ins. Co. v. Maryland Casualty Co.*, 587 F.Supp. 1549 (E.D.Mich.1984) (no coverage for losses sustained as a result of regular, continuous, nonaccidental disposal of insured's toxic waste); *American Casualty Co. v. Minnesota Farm Bureau Services, Co.*, 270 F.2d 686 (8th Cir.1959) (emission of pollutants as a result of the natural process of the insured's business was not an "accident" covered by the insurance policy); *Great Lakes Container v. Nat'l Union Fire Ins.*, 727 F.2d 30 (1st Cir.1984) (pollution exclusion clause provides no coverage for pollution done in regular course of business); *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984) (pollution exclusion clause focuses on the "release" of pollutants, and the behavior of pollutants in the environment after release is irrelevant); *Union Pacific Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 664 P.2d 1262 (1983) (pollution exclusion clause was meant to deprive active polluters of coverage); *Niagara Cy. v. Utica Mut. Ins. Co.*, 103 Misc.2d 814, 427 N.Y.S.2d 171 (1980) (public policy prohibits polluters from spreading risk of loss through the instrument of liability insurance); *Headley v. St. Paul Fire and Marine Ins.*, Civ. 87–5124 (D.S.D.1989) (drainage discharge from insured's sewage disposal facility onto plaintiff's land was found to be part of the continuous operation of the business and was knowingly permitted to exist and therefore discharge was not sudden and accidental; pollution exclusion clause thus provided no coverage to insured); *see also* Annot., 39 A.L.R.4th 1047 (1985) (construction and application of pollution clause in liability insurance policy).

Akers' amended complaint alleges two separate instances where contamination was caused by frozen pipes breaking during the winters of 1982 and 1984. The Court concludes that this type of an incident is both sudden and accidental. The test in determining what is a sudden accident was discussed in *Benedictine Sisters v. St. Paul Fire & Marine Ins.*, 815 F.2d 1209, 1211 (8th Cir.1987). The Court held that the test is whether or not an insured expected or intended the harm at the time it occurred. This is determined by inquiring whether the insured knowingly created and permitted the harm to exist. *Id.* at 1211–12. In this case, Whitewood did not knowingly create the harm caused when frozen pipes burst. There is no evidence that Whitewood was aware of any problem with the design of the pipes that would cause them to freeze. Because Whitewood did not expect or intend the harm at the time it occurred, the Court holds that the discharge was sudden and accidental. Accordingly, the Court finds that if the insurance was in effect at the time of the sudden and accidental release of the pollutants onto Akers' land, the insurance company has a duty to defend and to indemnify the insured for damages caused by this occurrence.

This finding resolves the declaratory judgment action with regard to American Universal because the November 1984 spill was clearly during the time period that American Universal provided coverage to

Whitewood. Accordingly, the Court will grant Akers' summary judgment motion as against American Universal.

■ As for Minnesota Mutual, Akers have not alleged any sudden and accidental discharge of pollutants occurred during that policy period. The January 1982 spill, although clearly sudden and accidental, occurred five months prior to Minnesota Mutual's insurance coverage. Akers posit that there is no requirement that the polluting event must occur within the policy period. However, they are unable to cite any cases where other courts have agreed with this theory. Coverage is not provided for an accident or occurrence which did not happen within the policy period. Therefore, because Akers' complaint does not allege a sudden and accidental discharge of pollutants during the time period Minnesota Mutual provided Whitewood with liability insurance, the pollution exclusion clause applies to defeat coverage for damages due to pollutants unless coverage is otherwise available under some other provision of the policy.

The Court is mindful that Akers' complaint alleges that during Minnesota Mutual's policy period, Whitewood negligently allowed hazardous wastes to be discharged from their treatment plant.[1] This negligence is not alleged to be sudden or accidental. Akers may be able to show that the manner in which Whitewood handled and stored the chemicals used in its business resulted in the escape of some of those chemicals into the air and ground. If that is the case, the pollution exclusion would again defeat coverage because the contamination of Akers' land took place on a continuous basis or as a part of Whitewood's regular business activity. See Headley v. St. Paul Fire & Marine Ins., Civ. 87–5124, (D.S.D.1989). When contamination has occurred due to a discharge of pollutants, no insurance coverage is available to the insured unless the discharge is sudden and accidental. The continuous negligence of Whitewood from 1981 to 1984 is not alleged in the complaint to be sudden and accidental. Comparing this allegation with the pollution exclusion clause, the Court finds that Minnesota Mutual is not obligated to defend or indemnify Whitewood.

### (b)

### Defining An "Occurrence"

■ Akers contend that Minnesota Mutual's obligation to defend and indemnify Whitewood arises under the policy's definition of an occurrence. The policy states that Minnesota Mutual will indemnify Whitewood for all bodily injury and property damages that arise out of an occurrence under the policy. An occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Akers contend that because Whitewood failed to clean up the chemical spills, Darlene Aker was continuously and repeatedly exposed to toxic chemicals which resulted in bodily injury that was neither expected nor intended from the standpoint of Whitewood. The Court must therefore determine whether this constitutes an occurrence.

Coverage under the standard policy definition of occurrence depends upon whether the resulting injury was either intended or expected from the standpoint of the insured. See Western Casualty & Surety Co. v. Waisanen, 653 F.Supp. 825, 830 (D.S.D.1987); see also Annot., 31 A.L.R.4th 957 (1984). Waisanen was a declaratory judgment action brought by an insurance company to determine its obligation to defend its insured. The definition of an occurrence in that case is exactly the same definition as is contained in both of the policies by Minnesota Mutual and American Universal in the case at hand. The Court clearly recognized in Waisanen that "injuries are caused by accident according to the quality of the result rather than the quality of the causes." Waisanen, 653 F.Supp. at 828–29. The test of "substantial probability" is to be used in determining whether the injury was expected or intended from

---

1. The Court notes that the negligence alleged in the complaint from 1981 to 1985 is not a negligent failure to clean up the chemical spills. The complaint specifically focuses only on the discharge of hazardous wastes.

the standpoint of the insured so as not to be within the definition of what constitutes an occurrence. *Id.* at 830. Substantial probability is more than reasonably foreseeable.

> The indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring, but the indications must also be sufficient to forewarn him that the results are *highly likely to occur.*

*Id.*, (citing *City of Carter Lake v. Aetna Casualty & Surety Co.*, 604 F.2d 1052, 1059 n. 4 (8th Cir.1979) (emphasis added)).

In determining what constitutes an occurrence, the focus is on whether the injury was highly likely to occur due to the chemical spills and Whitewood's failure to clean up those spills. Applying the substantial probability standard to the facts of this case, the Court concludes that damages caused to Akers by Whitewood's failure to clean up the hazardous chemicals which were discharged onto their land were highly likely to occur. A continuous and repeated exposure to toxic chemicals is highly likely to cause injury. The Court concludes, therefore, that Akers' injury to Darlene Aker's health and to Akers' land was reasonably expected from the standpoint of Whitewood. It therefore does not constitute an "occurrence" under the policy.

### VI

### AMERICAN UNIVERSAL'S DUTY TO PAY

██ American Universal argues that Darlene Aker's personal injury manifested itself in 1982 prior to the effective date of its insurance policy and therefore, its coverage is not triggered. This factual statement is disputed by Akers who contend that the majority of Darlene Aker's injuries occurred after the November 1984 spills or were greatly aggravated by that spill. The Court believes that the extent of Darlene Aker's injuries, when they occurred, and the amount of damages she is entitled to recover, are all issues of material fact which must properly be determined by the jury in the underlying state court action. If the jury determines that Darlene Aker's

injuries were caused by the November 1984 spill, American must indemnify Whitewood for payment of those damages. In the trial of the action in state court perhaps it would be advisable for the judge to submit appropriate special interrogatories to determine these factual issues.

This memorandum opinion represents the Court's findings of fact and conclusions of law and the Clerk may issue judgment based thereon. Based on the foregoing, it is hereby

### ORDER

ORDERED that Akers' motion for summary judgment against American Universal Insurance Company is granted and American Universal Insurance Company's cross motion for summary judgment against Akers is denied.

IT IS FURTHER ORDERED that Minnesota Mutual Insurance Company's motion for summary judgment against Akers is granted and Akers' cross motion for summary judgment against Minnesota Mutual Insurance Company is denied.

IT IS FURTHER ORDERED that upon the filing of the judgment, this case will be closed.