FIREMEN'S INSURANCE COMPANY
OF NEWARK, Plaintiff,

v.

BAUER DENTAL STUDIO, INC., and
Dailey Dental, Inc., Defendants.

No. Civ. 84–4284.

United States District Court,
D. South Dakota, S.D.

Feb. 6, 1986.

Edwin E. Evans and Mary J. Hertz, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiff.

John L. Morgan, of Morgan, Fuller, Theeler & Cogley, Mitchell, S.D., for defendant Bauer Dental Studio, Inc.

Michael V. Braley, of Horstman & Braley, Parkston, S.D., for defendant Dailey Dental, Inc.

## MEMORANDUM OPINION and ORDER

NICHOL, Senior District Judge.

Defendant Bauer Dental Studio, Inc., (Bauer) has submitted a motion for an allowance of attorney fees, and the motion is resisted by plaintiff Firemen's Insurance Company of Newark (Company). The facts are set out in this Court's Memorandum Opinion of December 3, 1985, 623 F.Supp. 84, but will be reiterated or supplemented as necessary in this Memorandum. Neither party has requested a hearing on the motion; hence, the Court will rely on the testimony adduced at trial as well as the other evidence contained in the record.

S.D.C.L. section 58–12–3 provides:

In all actions or proceedings hereafter commenced against any insurance company ... on any policy or certificate of

any type or kind of insurance, if it appears from the evidence that such company ... has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the department of labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee....

The statute applies although the insurer is the plaintiff disputing coverage rather than the named defendant in an action by the insured. *All Nation Insurance Co. v. Brown*, 344 N.W.2d 493, 494 (S.D.1984) (All Nation I). Whether an insurer's refusal to pay is vexatious or without reasonable cause is a question of fact. *All Nation Insurance Co. v. Brown*, 363 N.W.2d 216, 217 (S.D.1985) (All Nation II).

The Company argues that its decision of October, 1982, in favor of coverage was simply a mistake which, by happenstance, was corrected when Dailey filed his state court complaint in November of 1984 and Claims Supervisor Holmes realized that no property damage had been alleged. It appears, however, that Holmes and adjuster Logan never accepted the decision of their superiors, that they intentionally prolonged the ensuing negotiations in the hope of avoiding payment altogether, and that Holmes seized upon the imprecise language of the Dailey complaint to create a new reason for denying coverage.

Holmes testified that he initially denied coverage because in his opinion the dental crowns were Bauer's work product and therefore fell within exclusions (n), (o) and (p). The reversal of that decision by the regional and home office supervisors was also, according to Holmes, based on an interpretation of exclusions (n), (o) and (p). Thus, the supervisors determined that the dental crowns, at least as to Dailey, were not the insured's work product.

The supervisors' decision was made in October of 1982; at that point, Dailey was entitled to payment of his claim. Yet for the next two years, Holmes and Logan delayed and resisted the settlement negoti-

ations with Dailey. *Cf. Stoner v. State Farm Mutual Automobile Insurance Co.*, 780 F.2d 1414, 1417–19 (8th Cir.1986) (delay of three months by insurer sufficient to establish jury question of bad faith on tort claim). Throughout this period, Dr. Dailey had been replacing dental crowns as each patient reported the problem, obtaining the crowns from Bauer without charge for the time being but providing the labor and workmanship of installation at his own expense.

A reading of Logan's Adjuster's Activity Report for the Bauer file indicates that one of the primary purposes of the procrastination was the hope that somehow R–X Generics Co., the manufacturer of the Biocast metal alloy, could be brought into the case and made to pay some or all of the claim. Logan continually put off settlement requests from Dailey's attorney on the ground that he was waiting for a report from the Company's own expert to pinpoint the blame for the defective dental crowns. Through 1983 and the first half of 1984, the Company received three experts' reports indicating that Bauer rather than R–X Generics Co. was at fault. The Company's own expert finally filed a report in July or August of 1984 which also implicated Bauer. Yet even then, Logan continued to resist settlement, telling Bauer he still felt that "Generic is in this up to their eyeballs and [he] didn't want to pick up the tab for them." Exhibit 3 at 8/7/84. The Company's delay on this basis was wholly unwarranted since any possible liability of R–X Generics to the Company has no bearing on the Company's obligation to Dailey.

No settlement offer was made despite repeated requests and, later, demands from Dailey's attorney until Dailey filed the state court action. The Company then offered only $7,500.00—a tiny fraction of both the $74,881.00 which the Company itself estimated was due Dailey and the $36,000.00 which had been set up in a reserve fund for the Dailey claim. Finally, when this offer was rejected, the Company chose to file a declaratory judgment action rather than make a genuine effort at fur-

ther negotiations. While it is true that an insurer should not be penalized for contesting in good faith its liability, *see North River Insurance Co. v. Golden Rule Constr. Co.,* 296 N.W.2d 910, 915 (S.D. 1980), this principle has no application where, as here, the Company first determined there was coverage, then engaged in a two-year pattern of delay in adjusting the claim, and finally, spurred by the filing of the state court action against the insured, tendered a settlement offer far below the amount due.

Moreover, there was no reasonable basis for the last-minute decision to deny coverage. Holmes testified that, after reading Dailey's state court complaint, he determined that the claim was for an intangible economic loss rather than for tangible property damage within the meaning of the policy, an element necessary to trigger coverage. This conclusion was based, according to Holmes, on the language of the complaint, which alleged "financial loss," "embarrassment," and "damaged reputation." [1]

 However, since "physical injury to ... tangible property" is customarily measured by the cost of repair or replacement, a claim for property damage will generally be stated in terms of economic loss—either anticipated or, as here, already incurred. Thus, the allegations of financial loss in the Dailey complaint did not preclude the existence of a legitimate claim of property damage merely because the words "property damage" were not used. The complaint made clear that the cause of the financial loss was the crowns. The nature of Dailey's claim had remained constant from the beginning—he wanted to be reimbursed for his cost of removing and replacing defective dental crowns. Thus, nothing in the complaint provided a new basis for denial of coverage.

■ For these reasons, the Court finds the Company's refusal to pay was vexa-

tious and without reasonable cause. It is therefore

ORDERED that Firemen's Insurance Company pay to Bauer Dental Studio, Inc., the sum of $11,465.45, of which $10,671.51 represents fees incurred in defending this action and $793.94 represents fees incurred in the state court action by Dailey Dental, Inc., against Bauer Dental Studio, Inc.

---

1. There is no dispute that the policy does not cover Dailey's damages for embarrassment and

damaged reputation.