TRI–STATE INSURANCE COMPANY
OF MINNESOTA, Plaintiff and
Appellee,

v.

Frederick M. BOLLINGER, Defendant
and Appellant.

No. 17265.

Supreme Court of South Dakota.

Argued March 20, 1991.

Decided Oct. 16, 1991.

Raymond R. DeGeest, Rapid City, for plaintiff and appellee.

Benjamin J. Eicher of Wallahan & Eicher, Rapid City, for defendant and appellant.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

This is an appeal from a companion action to a personal injury lawsuit, Townsend v. Bollinger, Civ. No. 90–250, Seventh Judicial Circuit, Pennington County, which action is still pending. Townsend is seeking compensatory and punitive damages against Bollinger for injuries allegedly sustained in an altercation between the two men on September 16, 1989.

After commencement of the companion action, Bollinger tendered defense of the matter to his insurer, Tri–State Insurance Company of Minnesota (Tri–State). Tri–State rejected the tender and discovery proceeded in this companion case. Townsend subsequently served and filed an Amended Complaint. Bollinger again tendered the defense to Tri–State who again refused to defend. Tri–State then commenced a declaratory judgment action. Bollinger served and filed an Answer and Counterclaim, to which Tri–State served a Reply.

Tri–State moved the trial court for summary judgment. Bollinger filed its own Motion for Summary Judgment or for Judgment on the Pleadings, a Motion in Resistance to Plaintiff's Motion for Summary Judgment, a Memorandum of Law, and a Motion for Stay or Continuance on Plaintiff's Motion for Summary Judgment. Bollinger also filed an Affidavit in resistance to the summary judgment motion brought by Tri–State and in support of Bollinger's own summary judgment motion.

Tri–State's motion for summary judgment was scheduled for hearing on June 25, 1990, at 11:00 a.m. Bollinger prepared various motions, a memorandum of law and an affidavit in response. These documents were mailed to the clerk of courts on Friday, June 22nd, the Friday before the hearing. These documents were not received by the clerk of courts until Monday morning, the day of the hearing.

However, Bollinger's counsel hand-delivered "work copies" of the documents to the courthouse early Monday morning. Nevertheless, the trial judge still did not receive them in time to review the documents before the hearing. At the hearing, the trial judge expressed his displeasure with the late delivery of the responsive pleadings and struck them on the grounds that they had not been timely served under SDCL 15–6–6(d). The trial court granted Tri–State's motion for summary judgment. The trial court subsequently entered an Order Granting Plaintiff's Motion for Summary Judgment. From this Order, Bollinger appeals to this Court and presents the following issues:

I. Whether the trial court erred in striking Bollinger's responsive pleadings and granting Tri–State summary judgment;

II. Whether Tri–State is obligated to provide Bollinger with a defense and coverage in connection with the underlying claim;

III. Whether the pertinent coverage and defense inquiry was the "result" of Bollinger's act, and not the "act" itself; and

IV. Whether Bollinger is entitled to recover attorney's fees in the declaratory judgment action and in the companion case.

## FACTS

Frederick M. Bollinger (Bollinger) and Dennis Townsend (Townsend) had been close friends for many years. After Bollinger began dating his present wife, Barb, and ended a relationship with Townsend's sister, the two men had a falling out. Deterioration of this relationship between Bollinger and Townsend continued when Bollinger became convinced that Townsend had misappropriated money from Bollinger's business while he was on vacation.

We trace the facts, in this scenario, which are now in dispute. In September 1989, Townsend asked Bollinger if he would like to go hunting the following day. Bollinger viewed this as an opportunity to patch up their friendship and agreed to go. The two spent the next afternoon hunting. Both parties consumed alcoholic beverages

during the course of the afternoon and evening.

After dark, Bollinger and Townsend returned to Bollinger's residence and Bollinger invited Townsend inside. Townsend told Bollinger he had some things to say to Barb and that Bollinger might prefer to wait outside rather than hear what Townsend had to say. Bollinger said he was not concerned.

Once inside, Townsend launched into a tirade against Barb over the breakup of Bollinger's previous relationship with Townsend's sister. Townsend then accused Bollinger of cheating him out of some money, which Bollinger had received for work, that was accomplished while Townsend was employed by Bollinger. Bollinger became increasingly incensed over Townsend's comments and went outside on several occasions to calm down.

On one or more occasions, Bollinger told Townsend to get out of the house and eventually threatened him with physical harm if he did not leave. Townsend refused to leave. Bollinger then punched Townsend in the face, knocking him back into the chair in which he was sitting. In the struggle which followed, Townsend was either yanked up by Bollinger or attempted to stand up and the two fell to the floor. Although Townsend landed on top of Bollinger and was retaliating by striking Bollinger on the chest and arms, Bollinger succeeded in knocking Townsend over backwards and began beating him in the face with his fists. Bollinger clearly had the better of the fight, which ended when Barb told Bollinger to stop.

After the fight, Townsend told Bollinger that he thought his leg or ankle was broken. An ambulance was called and Townsend was taken to the hospital. Bollinger was arrested on charges of assault but never prosecuted.

### Pertinent Insurance Provisions To Be Considered

Bollinger asserts coverage under his homeowner's insurance policy procured from Tri–State. This homeowner's insurance policy provided the following.

Under "Section II—Liability Coverage," subsection "Coverage E—Personal Liability," the policy stated:

If a claim is made or a suit is brought against an insured for damages because of a bodily injury ... caused by an occurrence to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

Under the subsection titled "Coverage F—Medical Payments to Others," the policy provided:

We will pay the necessary medical expenses that are incurred or medically ascertained within three days of an accident causing bodily injury ... as to others, this coverage applies only:

1. To a person on the insured location with the permission of an insured.

Under "Subsection II—Exclusions" of the policy, it is stated:

1. Coverage E—Personal Liability and Coverage F—Medical Payments To Others do not apply to bodily injury or property damage:

A. Which is expected or intended by the insured.

These provisions of the homeowner's insurance policy are at the crux of the dispute between Bollinger and Tri–State. We have digested issues I, II, and III above under two discussions/holdings, *infra.*

### DECISION

#### I.

Tri–State Insurance Company refuses to defend Bollinger under its homeowner's insurance policy. Does it have a duty to do so under (1) this set of facts and (2) the language in the policy? Did the trial court have the procedural authority to strike *all* of Bollinger's responsive showings to Tri–State's Motion for Summary Judgment? Provisions of the policy are a "given."

Facts surrounding the combat and its intended results are all questions of fact.[1]

Townsend, whose ankle was broken in the fracas at Bollinger's home, was "obviously intoxicated" according to the records of the hospital, so noted by the doctors attending him. He had facial lacerations at the hospital (which could be expected in combat, a fracas, or tussle) and a diagnosed fractured ankle (which, *perhaps,* is not a reasonably foreseeable injury in a tussle at a home).

■ Trial court below struck Bollinger's showing wherein he resisted Tri–State's Summary Judgment Motion. Believing that the showing was tardy, trial court so declared that the showing, including an affidavit contravening Tri–State's factual explanation of the tussle scenario, was untimely. Thereupon, trial court struck all of Bollinger's responsive pleadings and assertions. We believe this was improper legal procedure. Trial court clearly misinterpreted or did not apply SDCL 15–6–5(c) and (d).[2] As applied to these facts, timeliness of service, and the applicable civil procedure, Bollinger had the procedural right to serve his documents prior to the day of the hearing. SDCL 15–6–56(c) provides a motion for summary judgment:

> shall be served at least ten days before the time fixed for the hearing. The adverse party *prior to the day of the hearing may serve opposing affidavits.*

(Emphasis added). SDCL 15–6–5(b) provides for service by mail and states: "Service by mail ... is complete upon mailing." *See Madsen v. Preferred Painting Contractor,* 89 S.D. 397, 233 N.W.2d 575 (1975). Bollinger's affidavit and memorandum were timely *served* prior to the day of the hearing and the trial court erred in

striking them as untimely. It was procedural error to disregard Bollinger's showing. Without any resistance in the record, Bollinger's defeat in the action was an inevitable conclusion: Bollinger was defeated—lifeless in the case—for want of resistance to Motion for Summary Judgment. It was therefore, we hold, prejudicial error. Trial court did not consider Bollinger's resistance for it totally struck them. Having struck his pleadings, the case was in a posture where one side of the case was considered and the other was not.

■ This appears to be an interesting procedural facet of the case below: Tri–State never filed, by responsive showing, any affidavit to contravene Bollinger's Motion for Summary Judgment. And Tri–State filed no affidavit in support of its Motion for Summary Judgment.

Tri–State carried the burden of proof as the moving party; the evidence must be viewed most favorably to the nonmoving party. *Koeniguer v. Eckrich,* 422 N.W.2d 600 (S.D.1988). The trial court took a 100% opposite view.

We reverse the trial court on its statutory, procedural error. Said error had an effect on the final result and affected the rights of the party assigning the error. *K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 533 (S.D.1983).

## II.

■ Furthermore, the trial court should not have granted summary judgment where the pleadings, and all supporting documents, demonstrate that there is a genuine issue of material fact and movant is not entitled to judgment as a matter of law. *Aetna Life Insurance Co. v. McElvain,* 363 N.W.2d 186 (S.D.1985).

---

1. The facts are hotly in dispute. A companion case below will have an issue presented and decided: Was Bollinger guilty of negligently causing Townsend's broken ankle?

2. SDCL 15–6–6(d) provides:
   A written motion, other than one which may be heard ex parte and notice of the hearing thereof or an order to show cause shall be served not later than five days before the time specified for the hearing, unless a

different period is fixed by this chapter or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion and, except as otherwise provided in § 15–6–59(b), opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time.

Tri–State appears to owe a duty to defend because of the language in the policy. Under Tri–State's exclusion, Coverage E (Personal Liability) and Coverage F (Medical Payments to Others) do not apply to *bodily injury* or *property damage* "which is expected or intended *by the insured.*" Thus, *bodily injury* or *property* damage is that which has to be "expected or *intended* by the insured." It surely is not the *act* of the insured which must be expected or intended for the conclusion to take effect. To adjudicate properly, we must inquire: do we mentally zero in on the *result* of the act or the act itself from which the result occurred? Therein, lie the central considerations of the issue.

Did Bollinger expect or intend to break Townsend's ankle? *Ordinarily,* such an injury as a broken ankle is not intended in a fist fight in a home. Tri–State's argument appears to rest solely upon a reading of the exclusionary language as applying to an *intentional act* by the insured, rather than if the *resulting injuries* were intended.

If, indeed, this policy is ambiguous, such ambiguity should be resolved in favor of Bollinger and against Tri–State. *McGriff v. United States Fire Ins. Co.,* 436 N.W.2d 859 (S.D.1989). *See also, Vanguard Ins. Co. v. Clarke,* 181 Mich.App. 36, 448 N.W.2d 754 (1989).

We reiterate our holding in *Hawkeye–Security Ins. Co. v. Clifford,* 366 N.W.2d 489 (S.D.1985). Therein, we expressed that an insurer's *duty to defend* and a *duty to pay* are on a totally independent footing. We held that the insurer's duty to defend was far broader than a duty to pay. *See also, Brown v. State Auto. Ins. Co.* 293 N.W.2d 822 (Minn.1980). Here, Tri–State contracted by its policy to "Provide a defense at our expense by counsel of our choice, *even if the suit is groundless, false or fraudulent. See, Pique v. Saia,* 450 So.2d 654 (La.1984) wherein that court construed identical language to that in the present case to be ambiguous and therefore construed the language most favorably for the insured. Accord: *United Services Automobile Ass'n. v. Elitzky,* 358

Pa.Super. 362, 517 A.2d 982 (1986). *See also,* holdings supporting the position that injuries are caused by "accident," according to the "quality of the result rather than the quality of the causes." *Taylor v. Imperial Casualty Indemnity Co.,* 82 S.D. 298, 144 N.W.2d 856, 859 (S.D.1966) and *Western Casualty & Surety Co. v. Waisanen,* 653 F.Supp. 825, 828–829 (D.S.D.1987) (*quoting, Messersmith v. American Fidelity Company,* 232 N.Y. 161, 133 N.E. 432 (1921)). In *Messersmith,* Justice Cardozo aptly expressed:

Injuries are accidental or the opposite for the purposes of indemnity according to quality of the results rather than the quality of the causes. *The field of exclusion would be indefinitely expanded,* if the [insurer's] argument were pursued to the limit of its logic. *Every act,* if we exclude, as we must, gestures or movements that are automatic or instinctive, *is wilful,* when reviewed in isolation and irrespective of its consequences. (emphasis supplied).

Tri–State contends that an injury of this nature (broken ankle in a fist fight inside a home) must, per se, be excluded from coverage. We disagree. Precisely, such an argument was rejected in *Vanguard Insurance Co. v. Cantrell,* 18 Ariz.App. 486, 503 P.2d 962 (1972) wherein that court held: a presumption that a person intends the ordinary consequences of his voluntary actions, when theoretically attempting to determine the consequence of a voluntary act, has no application to interpretation of terms used in insurance contracts.

It is to be remembered that counts II and III involve allegations of negligence. In the companion case, what will the results be as those counts? No one knows now. It is possible that a jury could determine Bollinger to be negligent. In such a case, Tri–State would be liable to Townsend under the policy. Trial court's decision to grant summary judgment was absolutely premature.

In summary, Bollinger could well have intended facial injury but not a broken ankle. A jury should sort this out, under proper instructions. It would be wrong to

have disparate judicial determinations, i.e., the trial court's summary judgment in favor of Tri–State and a jury, in futuro, deciding Bollinger was negligent only. Therefore, the trial court is reversed.

## ATTORNEY'S FEES

■ We remand this issue to the trial court in light of our decision. Due to the adverse summary judgment below, Bollinger was not awarded attorney's fees. At issue is SDCL 58–12–3 which provides:

> In all actions or proceedings hereafter commenced against any employer who is self-insured, pursuant to § 62–5–4, or insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the department of labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company, exchange or self-insurer before the commencement of the action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed. The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company or self-insurer arising out of its refusal to pay such loss.

Bollinger relies on SDCL 58–12–3 as South Dakota authority for an award of attorney's fees. To paraphrase SDCL 58–12–3, attorney's fees may be awarded if the insurance company has refused to pay the full amount of the loss, *and* that such refusal is vexatious or without reasonable cause.

*American Family Mut. Ins. v. Merrill*, 454 N.W.2d 555 (S.D.1990) had a similar scenario to this case. There, this Court held that an insurer was not guilty of unreasonable or vexatious conduct in asserting and relying on its coverage defense and in seeking a determination of the coverage question in a declaratory judgment action.

This Court stated that the trial court must find conduct of insurer to be vexatious or without reasonable cause. It is a question of fact and is reviewed under the clearly erroneous standard. *Firemans Fund Ins. Co. v. Bauer Dental Studio, Inc.*, 626 F.Supp. 1365 (D.S.D.1986); *Ewalt v. Mereen–Johnson Mach. Co.*, 414 N.W.2d 28 (S.D.1987); *Johnson v. Shelly Oil Co.*, 359 N.W.2d 130 (S.D.1984). Absent newly developed facts which would develop below, it appears that Tri–State, under the state of the record before us, has not acted vexatiously or without reasonable cause in paying the full amount of the loss. This being a factual question, we advise the trial court to enter findings of fact and conclusions of law at the appropriate time when the litigation has been tried in chief.

SABERS and AMUNDSON, JJ., concur in part and concur in result in part.

MILLER, C.J., and WUEST, J., concur in part and dissent in part.

SABERS, Justice (concurring in part and concurring in result in part).

1. I agree that it was prejudicial error for the trial court to reject Bollinger's *timely* pleadings and affidavit.

2. I also agree that Tri–State has a *duty to defend* under these circumstances.

3. Whether or not Tri–State will be determined to have a *duty to pay* will depend on whether the result (the broken ankle) was reasonably intended or expected "by the insured" under *all* the facts and circumstances. This presents a genuine issue of material fact, a jury question, and it was improper and premature for the trial court to rule otherwise now.

4. Whether Tri–State's refusal to defend and refusal to pay is vexatious or without reasonable cause under SDCL 58–12–3 is a question of fact, premature, and

we should refrain from expressing an opinion thereon.

AMUNDSON, J., joins this special writing on part 3 only.

WUEST, Justice (concurring in part and dissenting in part).

I agree the trial court made a procedural error.

Tri–State's motion for summary judgment was scheduled for hearing on Monday, June 25, 1990, at 11:00 a.m. Bollinger prepared various motions, a memorandum of law and an affidavit in response. These documents were mailed to the clerk of courts on Friday, June 22nd, the Friday before the hearing. Consequently, they were not received by the clerk of court until Monday morning, the day of the hearing.

Realizing the trial judge might not receive these documents sufficiently in advance of the hearing, Bollinger's counsel hand-delivered "work copies" of the documents to the courthouse early Monday morning. However, the trial judge still did not receive the documents in time to review them before the hearing. At the hearing, the trial judge expressed his displeasure with the late delivery of the responsive pleadings and struck them on the grounds they had not been timely served under SDCL 15–6–6(d).[1] Bollinger contends his affidavit and memorandum of law were timely served and the trial court erred in striking them.[2]

SDCL 15–6–56(c) provides a motion for summary judgment:

shall be served at least ten days before the time fixed for the hearing. The adverse party *prior to the day of the hearing may serve opposing affidavits.*

**1.** SDCL 15–6–6(d) provides:
A written motion, other than one which may be heard ex parte and notice of the hearing thereof or an order to show cause shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by this chapter or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the

(Emphasis added). SDCL 15–6–5(b) provides for service by mail and states: "Service by mail ... is complete upon mailing." *See Madsen v. Preferred Painting Contractor,* 89 S.D. 397, 233 N.W.2d 575 (1975). Clearly, Bollinger's affidavit and memorandum were timely *served* prior to the day of the hearing and the trial court erred in striking them as untimely. However, that error was harmless.

Bollinger's homeowner's insurance policy provided under "Section II—Liability Coverages," and the subsection titled "Coverage E—Personal Liability:"

If a claim is made or a suit is brought against an insured for damages because of bodily injury ... caused by an occurrence to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages which the insured is legally liable. Damages include pre-judgment interest awarded against the insured; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent[.]

Under the subsection titled "Coverage F—Medical Payments To Others," the policy provided:

We will pay the necessary medical expenses that are incurred or medically ascertained within three days of an accident causing bodily injury.

1. To a person on the insured location with the permission of an insured....

Under "Subsection II—Exclusions" of the policy, it is stated:

1. Coverage E—Personal Liability and Coverage F—Medical Payments To Others do not apply to bodily injury or property damage:

A. Which is expected or intended by the insured.

affidavit shall be served with the motion and, except as otherwise provided in § 15–6–59(b), opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time.

**2.** He does not challenge the striking of his various motions.

Bollinger's affidavit averred, *inter alia,* that he did not intend or expect any injury to result from his striking Townsend in the face and did not intend or expect Townsend's leg or ankle to break when he struck him. Bollinger contends the exclusion for bodily injury "expected or intended by the insured" should be interpreted under a subjective standard; thus, the subjective expectations or intentions of the insured control. Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there is no genuine issue of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.,* 390 N.W.2d 558 (S.D.1986); *Wilson v. Great Northern Railway Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). Bollinger submits his affidavit raises a genuine issue of material fact (his expectations or intentions), precluding summary judgment. Under such an analysis, the trial court's striking of Bollinger's affidavit would be prejudicial. However, I would decline to adopt the subjective standard approach urged by Bollinger, and for the following reasons, the refusal to consider his affidavit was harmless error.

As a general rule, an insurance contract is to be construed liberally in favor of the insured and strictly against the insurer; however, this rule only applies when the language of the insurance contract is ambiguous. *Strong v. State Farm Mutual Ins. Co.,* 76 S.D. 367, 369, 78 N.W.2d 828, 829 (1956). In *Klatt v. Continental Ins. Co.,* 409 N.W.2d 366, 369–70 (S.D.1987), we held a similarly worded provision excluding coverage for intentional acts was clear and unambiguous, making construction of the contract unnecessary. The policy in *Klatt* defined "occurrence" as an accident which results in bodily injury neither expected nor intended from the standpoint of the insured. *Id.* at 369–70. Although the policy at issue here is organized and phrased slightly differently, it is substantially similar in substance to the policy in *Klatt.* We acknowledged in *Klatt* that numerous jurisdictions consider intentional act provisions to be clear and unambiguous. *Id.* at 370, n. 4. I find Tri–State's intentional act exclusion to be clear and unambiguous.

The duty to defend and the duty to pay under an insurance policy are independent and several duties. *Hawkeye–Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 490 (S.D.1985). The duty to defend is much broader than the duty to pay:

> if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend. The review then ends, even though the pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent. (Footnotes omitted).

*Id.,* at 491–492. *Accord City of Fort Pierre v. United Fire and Cas. Co.,* 463 N.W.2d 845, 847 (S.D.1990); *Bayer v. Employers Reinsurance Corp.,* 383 N.W.2d 858, 860 (S.D.1986). Thus, we should examine Townsend's pleadings in light of the policy coverage.

Townsend's initial complaint alleged assault and battery. His amended complaint framed three causes of action: (1) assault and battery; (2) negligent assault; and (3) malicious assault, negligently inflicting personal injury. Although the amended complaint alleges negligence,

> mere allegations of negligence in a transparent attempt to trigger insurance coverage by characterizing intentionally tortious conduct as negligent will not persuade [this] court to impose a duty to defend.

*Iowa Kemper Ins. Co. v. Ryan,* 172 Mich. App. 134, 137, 431 N.W.2d 434, 436 (1988) (citation omitted). *Accord Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400, 405–06 (1985).

Bollinger's assault and battery were intentional as a matter of law. Assault and battery result from an intentional act, while negligence is unintentional. 6 Am. Jur.2d, Assault and Battery § 2; 6A C.J.S. Assault and Battery § 7(a). The two are mutually exclusive and there can be no such cause of action as negligent assault. *State Farm Fire and Cas. v. van Gorder,*

235 Neb. 355, 455 N.W.2d 543, 545 (1990); 57A Am.Jur.2d Negligence, § 35. Indeed, the intent to do harm is the essence of assault and battery. 6 Am.Jur.2d, Assault and Battery § 2, 3, 5. Therefore, one may not negligently inflict harm in the course of an assault and battery. *See Aetna Cas. & Sur. Co. v. Freyer*, 89 Ill.App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157 (1980). As a matter of law, the only material allegation in Townsend's amended complaint is the assault and battery claim, which, for the following reasons, clearly falls outside of policy coverage.

This case turns on whether the bodily harm suffered by Townsend was "intended or expected" by Bollinger within the meaning of the exclusion. Bollinger urges this court to adopt a subjective standard in that his subjective intent and expectations would govern. However, this approach would place complete control of insurance coverage in the hands of the insured and has been rejected. *See Western⁴ Cas. & Sur. Co. v. Waisanen*, 653 F.Supp. 825 (D.S.D.1987) (applying South Dakota law); *van Gorder*, 455 N.W.2d 543 (identical exclusion provision); *Mutual Service Cas. Ins. Co. v. McGehee*, 219 Mont. 304, 711 P.2d 826 (1985); *Horace Mann Ins. Co. v. Independent Sch. Dist. No. 656*, 355 N.W.2d 413 (Minn.1984); *Freyer*, 411 N.E.2d 1157; *Steinmetz v. Nat'l Amer. Ins. Co.*, 121 Ariz. 268, 589 P.2d 911 (1979).

> The intentional exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses under policies are uncertain from the standpoint of any single policyholder, and if a single insured is allowed through intentional or reckless acts to *consciously* control risks covered by policy, *the central concept of insurance is violated.*

*Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 694 P.2d 181 (1984) (*quoting* 7A Appleman, *Insurance Law and Practice* § 4492.01, at 21 (1979)).

We have in two prior cases intimated that the exclusionary language "intended or expected" will be interpreted under tra-

ditional, common law tort analysis; that being, an insured intends or expects the natural and probable consequences of his or her actions. *Klatt*, 409 N.W.2d at 370; *Taylor v. Imperial Cas. & Indem. Co.*, 82 S.D. 298, 144 N.W.2d 856, 859 (1966). Numerous jurisdictions apply this approach. *See, e.g., Butler v. Behaeghe*, 37 Colo.App. 282, 548 P.2d 934 (1976); *Steinmetz*, 589 P.2d 911; *Ryan*, 431 N.W.2d at 436; *Hins v. Heer*, 259 N.W.2d 38, 40 (N.D.1977). I would, here, expressly adopt it.

Applying this approach to Bollinger's actions, we may infer that Bollinger intended to harm Townsend by striking him in the face with his fist.

> [T]he act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law.

*Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388, 391 (1979) (*quoting Clark v. Allstate Ins. Co.*, 22 Ariz.App. 601, 529 P.2d 1195 (1975)). *Accord McGehee*, 711 P.2d at 828; *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689, 691 (1984). The broken ankle that resulted is a harm which is the natural or probable consequence of the struggle Bollinger's blow precipitated. Since, as a matter of law, Bollinger intended to inflict bodily injury upon Townsend, any damage caused by his actions is excluded from coverage under his homeowner's policy whether different or more severe than was intended. *Jones*, 279 N.W.2d at 392. *See also Rodriguez v. Williams*, 107 Wash.2d 381, 729 P.2d 627 (1986); *Van Gorder*, 455 N.W.2d at 546; *McGehee*, 711 P.2d at 828; *Meere* 694 P.2d at 185; *Oakes v. State Farm Fire and Cas. Co.*, 137 N.J.Super. 365, 349 A.2d 102, 103 (App.Div.1975). The factual allegations of Bollinger's affidavit are of no consequence. Thus, the improper striking thereof by the trial court was not prejudicial error. There is no genuine issue of material fact in this case, and Tri–State is

entitled to summary judgment as a matter of law.

Because Tri–State is not obligated to provide a defense or coverage, Bollinger is not entitled to attorney's fees in connection with this declaratory judgment or the underlying action brought by Townsend. I would affirm.

MILLER, C.J., joins this special writing.