Judson **PINS**, Plaintiff,

v.

**STATE FARM FIRE & CASUALTY CO.**, Defendant.

No. CIV. 04–4027.

United States District Court,
D. South Dakota,
Southern Division.

Feb. 23, 2005.

Ronald A. Parsons, Jr., Scott A. Abdallah, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD, for Plaintiff.

William P. Fuller, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiff, Judson Pins ("Pins") has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on the insurance coverage issues in this case. Pins seeks a judgment that defendant State Farm Fire & Casualty Co. ("State Farm") owed and breached duties to defend and indemnify Pins in a lawsuit brought against him in circuit court in Minnehaha County, South Dakota. State Farm seeks judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), contending that it had no duty to defend or indemnify Pins. As discussed below, State Farm had a duty to

defend and indemnify Pins in the lawsuit which is the subject of these motions. Accordingly, State Farm's motion for judgment on the pleadings will be denied, and Pin's motion for partial summary judgment will be granted.

## BACKGROUND

The motions at issue here involve the lawsuit, *Gery F. Baar v. Judson Pins*, Civ. 02–2663 (the "underlying action"), filed in the Second Judicial Circuit Court in South Dakota. The following facts are undisputed unless otherwise noted:

On or about May 20, 2000, State Farm issued to Pins a personal liability umbrella insurance policy (the "Policy"). The Policy was renewed on an annual basis. On or about November 19, 2002, while the Policy was in force, Pins was served with the complaint in the underlying action. The complaint included claims for negligent infliction of emotional distress, intentional infliction of emotional distress, alienation of affections and punitive damages for conduct that occurred within the period covered by the Policy. The complaint sought compensatory damages against Pins in the amount of $2,500,000.

Pins tendered the defense of the lawsuit to State Farm. State Farm retained an attorney to represent Pins, but reserved its right to deny a defense and indemnification after further investigation. On or about March 12, 2003, State Farm informed Pins that it would discontinue its defense and that there would be no indemnification for any loss in the underlying action. Pins' own attorney represented and defended him in the underlying action at Pins' expense. The parties reached a settlement agreement pursuant to which Pins agreed to pay Baar a confidential amount of money, and the underlying action was dismissed on November 3, 2003.

State Farm did not contribute to the settlement. This lawsuit was commenced on January 12, 2004, in the Second Judicial Circuit Court in South Dakota. It was removed to this Court on February 12, 2004 based on diversity of citizenship. The Complaint contains five counts: breach of contract (Count I), bad faith (Count II), punitive damages (Count III), attorney fees pursuant to SDCL § 58–12–3 (Count IV), and declaratory relief (Count V). The parties agreed to defer all discovery pending a ruling from the Court on the coverage issues, and they submitted simultaneous motions with supporting briefs.

Under the Policy, State Farm agreed to defend Pins in any suit "covered by this policy." (Policy at § 2. Defense and Settlement at p. 3.) State Farm agreed to indemnify Pins for damages he became legally obligated to pay as a result of a "loss." (Policy at § 1. Coverage L—Personal Liability.) The Policy Endorsement issued by State Farm provides two definitions of "loss." First, a "loss" can mean an "accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period." (Policy Endorsement at § 6(a), Definitions.) An alternative definition of "loss" is "the commission of an offense, or series of similar or related offenses, which result in personal injury during the policy period." (Policy Endorsement at § 6(b), Definitions.) "Bodily injury" means: "Physical injury, sickness, disease, emotional distress or mental injury to a person." (Policy Endorsement at § 17, Definitions.) "Personal Injury" is defined as "injury caused by one or more of the following offenses: a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution; b. libel, slander, defamation or character or invasion of rights of privacy." [1] (Policy Endorsement

---

1. Prior to the Policy Endorsement, the definition of "personal injury" in the Policy includ-

at § 9, Definitions.) The Policy has an exclusion which is relevant to this case:

 2. for bodily injury or property damage:

 a. which is either expected or intended by you; or

 b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

(Policy Endorsement, Exclusions.)

State Farm does not contend that Pins' actions were malicious, and it does not argue that subsection (b) of the exclusion applies in this case. Thus, the issues for purposes of the pending motions are whether the allegations in the underlying complaint meet the first definition of a "loss" as an accident resulting in bodily injury, and if so, whether the exclusion for bodily injury expected or intended by the insured applies in this case.

## SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Far-*

*row,* 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *City of Mt. Pleasant v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## JUDGMENT ON THE PLEADINGS

On a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party. *United States v. Any and all Radio Station Transmission Equip.,* 207 F.3d 458, 462 (8th Cir.2000). Judgment on the pleadings is appropriate where no ma-

---

ed "mental anguish or mental injury," but "mental anguish or mental injury" was eliminated from the definition of "personal injury" in the Policy Endorsement. (Policy Endorsement at § 9, Definitions.) In his opening brief, Pins erroneously relied on the former definition of "personal injury" when arguing

that Baar's allegations of emotional distress amounted to personal injury covered under the policy. Baar's allegations in the underlying complaint do not meet the definition of "personal injury" in the Policy Endorsement, and Pins did not pursue this argument in his opposing brief.

terial issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Id.* If matters outside the pleadings are presented to and considered by the Court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.Civ.P. 12(c).

## DISCUSSION

### A. State Farm's Duty to Defend

■■■■ South Dakota law governs this coverage dispute. *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 455 (8th Cir.1998) ("State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction.") "In South Dakota, the insurer's duty to defend and the insurer's duty to indemnify are severable and independent duties, and the duty to defend an insured is much broader than the duty to indemnify." *Allied Mut. Ins. Co. v. Dakota Rose, Inc.,* 43 F.Supp.2d 1081, 1084 (D.S.D.1999). An insurer's duty to defend is generally measured by the terms of the policies and the pleadings. "An insurer must defend its insured if the pleadings in the action against the insured allege facts which, if established, would support a recovery under the policy." *American Universal Ins. Co. v. Whitewood Custom Treaters, Inc.,* 707 F.Supp. 1140, 1145 (D.S.D.1989) (citations omitted). In order to avoid a duty to defend, the insurer must show that the claim clearly falls outside the policy coverage. *Crum & Forster Ins. Co. v. Pacific Employers Ins. Co.,* 907 F.Supp. 312, 313–14 (D.S.D.1995) (citing *Hawkeye-Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 490 (S.D.1985)). Thus, "if it is clear or arguably appears from the face of the pleading in the action against the insured that the alleged claim, if true, falls within the policy coverage, the insurer must defend." *Id.* If just one claim falls within the policy coverage, the insurer must defend "even though the

pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent." *Hawkeye-Security,* 366 N.W.2d at 491–92.

■■■ In addition to the pleadings, a court determining the scope of the claims against an insured may also consider "where appropriate, other evidence of record." *Dakota Rose,* 43 F.Supp.2d at 1084 (quoting *North Star Mut. Ins. Co. v. Kneen,* 484 N.W.2d 908, 912 (S.D.1992)). In *Hawkeye-Security Ins. Co. v. Clifford,* 366 N.W.2d 489 (S.D.1985), the South Dakota Supreme Court explained that whenever it arguably appears from the pleadings that a claim against the insured is covered by the insurance policy, "[t]he review ends, even though the pleadings are ambiguous." 366 N.W.2d at 491. However, the *Hawkeye* decision went on to state that a court should reach a decision on the scope of the claims against an insured after considering, "when appropriate, other record evidence," and cited cases which approved the use of evidence outside the pleadings for that very purpose. *Id.* at 492. The South Dakota Supreme Court has continued to cite this passage of *Hawkeye* and has indicated its willingness to consider appropriate evidence outside the pleadings. *See Kneen,* 484 N.W.2d at 912. Moreover, this Court has considered the absence of evidence outside the pleadings in determining the scope of claims against an insured. *See Crum & Forster,* 907 F.Supp. at 314. Accordingly, the Court will consider the exhibits attached to the Complaint and the exhibits attached to the Plaintiff's Statement of Material Facts, including the sworn statement of Ms. Baar, the deposition of Ms. Baar and the summary of Pins' statement.

■■■ As an initial matter, the Court notes that the South Dakota Supreme Court has not addressed an insurer's duty

to defend or indemnify claims for alienation of affections, intentional infliction of emotional distress or negligent infliction of emotional distress. In cases where the highest court of the state has not spoken on the subject, federal courts must "ascertain from all the available data what the state law is" and "apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts." *Josewski v. Midland Constructors, Inc.*, 117 F.Supp. 681, 682 (D.S.D.1953) (quoting *Werthan Bag Corp. v. Agnew*, 202 F.2d 119, 124 (6th Cir.1953)).

As stated earlier, the issues for purposes of determining whether State Farm had a duty to defend Pins in the underlying action are whether the allegations in the underlying complaint meet the definition of a "loss" as an accident resulting in bodily injury, and if so, whether the exclusion for bodily injury expected or intended by the insured applies in this case. Pins accurately stated in his Brief that these issues are "analytically similar." State Farm likewise noted that "[t]he rationale courts have used regarding the 'expected or intended' injury exclusion is virtually indistinguishable from the rationale used" to determine whether the tort meets the definition of an "accident" under the policy. Indeed, courts, including the South Dakota Supreme Court, often conflate the analysis of these two issues. This Court has closely examined a number of opinions of the South Dakota Supreme Court addressing these types of coverage issues. A discussion of those cases follows. One thing is clear: the South Dakota Supreme Court has not articulated a hard and fast rule for whether an intentional tort can be an "accident" covered by insurance.

■ In *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366 (S.D.1987), the liability policy issued to the City of Clark provided coverage for bodily injury or property damage caused by an "occurrence," defined as "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 369. Police officers for the City of Clark assaulted Klatt by kicking, kneeing, punching, hitting, clubbing, and viciously beating him about the head and body. *Id.* at 367. The South Dakota Supreme Court found that the police officers "intended to cause Klatt's injuries as alleged in the amended complaint" and that "Klatt's injuries were caused by the intentional acts of [the police officers] who expected the natural consequences of their actions." *Id.* at 370. The Court held that no coverage existed under the insurance policy. *Id.* at 371. The holding in Klatt shows that, under South Dakota law, the intended consequences of an intentional act are not an "accident," for purposes of insurance contract interpretation.

■ In a later case, the South Dakota Supreme Court held that unintended results of an intentional act are covered accidents, noting that intentional acts sometimes lead to unintentional harms. *See Tri–State Ins. Co. of Minnesota v. Bollinger*, 476 N.W.2d 697 (S.D.1991). *Bollinger* arose out of a fight between Bollinger and Townsend. Townsend suffered a broken ankle during the fight and he sued Bollinger. Bollinger tendered the defense to Tri–State. The insurance policy covered damages resulting from bodily injury caused by an "occurrence" and excluded coverage for bodily injury "expected or intended by the insured." 476 N.W.2d at 699. Tri–State refused to defend Bollinger and filed a declaratory judgment action. *Id.* The trial court held that Tri–State was not obligated to defend or indemnify Bollinger. *Id.* at 698. The South Dakota Supreme Court reversed, ruling that it is not the *intentional act* of the insured which must

be expected or intended for the intentional act exclusion to apply. Rather, a court must consider whether the *resulting injuries* were intended. *Id.* at 701 (emphasis in the original). The Court found that Bollinger may not have intended to break Townsend's ankle, and a jury should decide that issue. If he did not intend the broken ankle, coverage would exist.

A somewhat similar intentional act exclusion was addressed by the South Dakota Supreme Court in *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908 (S.D.1992). The underlying lawsuit in *Kneen* was filed by Patricia Kneen ("Patricia") against Arthur Kneen ("Arthur"). Patricia's arm broke when Arthur tried to forcibly pull her out of a car. *Id.* at 910. Patricia's civil complaint against Arthur sought damages on alternative theories. Count I alleged negligence and Count II alleged assault and battery, an intentional tort. *Id.* Arthur's insurance policy with North Star provided coverage for liability for "bodily injury or property damage caused by an occurrence." *Id.* Occurrence was defined in the policy as "an accident...." The policy contained an exclusion for liability "resulting from bodily injury or property damage caused intentionally by or at the direction of the insured." *Id.* North Star filed a declaratory judgment action asserting that it had no duty to defend Arthur or to provide coverage for him in the underlying action. *Id.* North Star argued that, despite the negligence claim, Patricia's claim arose out of an intentional act and, therefore, it was excluded from coverage under the policy. *Id.* The South Dakota Supreme Court held:

> It is clear that North Star's duty to defend appears from the face of the pleadings. North Star has a duty to defend its insured in the underlying lawsuit because the pleadings regarding negligence, if true, provide a basis for

potential liability. The fact that the lawsuit is based on theories brought in the alternative does not relieve North Star of its duty to defend.

\* \* \* \* \* \*

> In the instant case, the facts alleged and pleaded indicate that there is an arguable basis for the belief that the injuries occurred as a result of a negligent act by Arthur Kneen.

*Id* at 912. Although it is not explicitly stated in the *Kneen* opinion, the South Dakota Supreme Court's focus was not on whether Arthur intentionally pulled Patricia's arm, but on whether he intended to break it. If he did not intend the broken arm, coverage would exist.

■ As in *Klatt*, the South Dakota Supreme Court again held that the intended results of an intentional act are not covered under a policy defining "occurrence" as "an accident" in *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636 (S.D. 1995). *Wertz* involved an automobile insurance policy which provided coverage for "bodily injury ... caused by accident resulting from the ownership, maintenance or use of your car...." *Id.* at 639 n. 1. The driver of the automobile intentionally ran into a semi-truck for the purpose of harming his passenger. *Id.* at 637–38. The passenger brought suit seeking damages for false imprisonment, assault, and negligence. *Id.* at 637. State Farm brought a declaratory judgment action seeking to have the court declare there was no coverage for the driver's intentional acts. *Id.* The South Dakota Supreme Court explained that the critical issue when determining an insurer's duty to defend or indemnify is not whether the insured intended to act, but whether he "intended to inflict the resulting injuries." *Id.* at 639. Since the driver of the automobile intended both his acts and the resulting injuries, there was no coverage.[2]

---

**2.** Even though the policy did not contain an intentional acts exclusion, the Court held that

*See also Stoebner v. South Dakota Farm Bureau Mut. Ins. Co.,* 598 N.W.2d 557, 559 (S.D.1999)("Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal [insurance] policy provisions if there was no intention to cause, by the commission of the acts, the resulting injury or damages.") These cases demonstrate that an intent to injure, not merely an intentional act, is necessary for uninsurability under South Dakota law.

In very limited instances, the South Dakota Supreme Court has held that the intent to injure can be inferred as a matter of law. For example, in *American Family Mut. Ins. Co. v. Purdy,* 483 N.W.2d 197, 201 (S.D.1992), the Court held that, as a matter of law, there is an inference that harm to the victim is expected or intended by the perpetrator of criminal sexual acts. "We hold these acts of criminal sexual contact are of such a nature that the intent to inflict bodily injury will be inferred as a matter of law. The exclusion for bodily injury either 'expected or intended' in this policy applies to these facts." *Id.* at 201.

### 1. Alienation of Affections

 This Court believes that the South Dakota Supreme Court would not place alienation of affections in the same category as criminal sexual contact or rape in order to determine insurance coverage for such a claim. The intent to inflict bodily injury on an individual cannot be inferred from the act of having consensual sexual relations with that individual's spouse. Adults have consensual sex for reasons other than to entice their sexual partner's affections away from his or her spouse.

 State Farm cites language in *Veeder v. Kennedy,* 589 N.W.2d 610 (S.D. 1999), and argues that the intent to injure

"public policy prohibits extending insurance coverage to an individual who intentionally

can be presumed in an alienation of affections claim. *Veeder* involved a suit for alienation of affections against Kennedy who had a sexual relationship with Veeder's wife. Veeder was awarded $265,000 in compensatory and punitive damages. The language cited by State Farm arose from the Court's rejection of the defendant's argument that the jury should have been instructed that the defendant must have intended to entice the affections of one spouse away from the other. After listing the elements of a claim for alienation of affections as: 1) wrongful conduct of the defendant; 2) loss of affection or consortium; and 3) a causal connection between such conduct and loss, *id.* at 618–19, the Court held that only the wrongful conduct must be intentional in order to state a claim for alienation of affections:

> It also appears to be the general rule that actual intent to alienate the affections of the spouse of another need not necessarily be shown if defendant's conduct is inherently wrong and tends to, and does, have that effect. In other words every person is presumed to intend the consequences of his own voluntary acts.

*Veeder* at 619 (quoting *Pearsall v. Colgan,* 76 S.D. 241, 76 N.W.2d 620, 621 (1956)). In reaching this conclusion, the Court in *Veeder* was not analyzing whether the paramour of Veeder's wife intended to harm Veeder for purposes of determining coverage under an insurance contract. Rather, the Court was discussing the elements required to prove alienation of affections. As discussed above, the South Dakota Supreme Court has shown that analyzing whether coverage exists is different from analyzing whether someone has proven the elements of a cause of

harms others." *Wertz,* 540 N.W.2d at 640.

action. The Court has said that, for purposes of determining coverage, you must determine whether the insured intended the injury that occurred: "It surely is not the *act* of the insured which must be expected or intended for the [exclusion] to take effect." *Bollinger*, 476 N.W.2d at 701(emphasis original). In fact, the South Dakota Supreme Court in *Bollinger* recognized that "a presumption that a person intends the ordinary consequences of his voluntary actions, when theoretically attempting to determine the consequence of a voluntary act, has no application to interpretation of terms used in insurance contracts." *Id.* at 701 (quoting *Vanguard Ins. Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972)).

Thus, to determine whether coverage exists for the alienation of affections claim, it is not the responsibility of this Court to determine whether the dissolution of the Baar's marriage was an "accident" or whether Pins' acts were intentional. This Court need only determine whether Pins intentionally caused the dissolution of Baar's marriage by having sexual relations with Denise Baar. Because it is possible, indeed likely, that Pins did not intend to break up Baar's marriage by having sexual relations with Baar's wife, coverage may exist under the policy and State Farm had a duty to defend Pins against the alienation of affections claim.

There is no question that State Farm withdrew its defense of the lawsuit against Pins and failed to pay any defense costs after the withdrawal. Accordingly, no material facts are in dispute regarding whether State Farm breached its duty to defend, and Pins is entitled to summary judgment on that claim. *See Carter v. Aetna Casualty and Surety Co.*, 473 F.2d 1071, 1076 (8th Cir.1973) ("An insurer which refuses to defend a suit within the policy breaches its contract with an insured.") The amount of actual damages caused by the breach of the duty to defend will be decided in further proceedings.[3]

## 2. Intentional Infliction of Emotional Distress

■■■ Even though an insurer must defend if just one claim falls within the policy coverage, the Court will address why Baar's intentional infliction of emotional distress claim does not trigger State Farm's duty to defend Pins in the underlying lawsuit.[4] First, the South Dakota Supreme Court has held that the tort of intentional infliction of emotional distress is unavailable as a matter of public policy when it is predicated on conduct which leads to the dissolution of a marriage. *See Pickering v. Pickering*, 434 N.W.2d 758,

---

3. The Complaint alleges that Pins incurred reasonable legal fees and expenses in excess of $38,000 and that State Farm paid approximately $2,545.82 prior to formally withdrawing its tender of defense, but no further information, argument or legal authorities have been provided to the Court on this issue.

4. In Plaintiff's Brief in Support of motion for Partial Summary Judgment (doc. 11), Pins does not argue that the intentional infliction of emotional distress claim invokes coverage, and he admits that a claim for alienation of affections generally is viewed as an intentional tort in South Dakota. Pins focuses on his claim for negligent infliction of emotional distress as invoking coverage under the Policy. In his brief in opposition to State Farm's motion for judgment on the pleadings (doc. 18), Pins again limits his coverage arguments to the negligence claim. However, under South Dakota law as described earlier in this Memorandum Opinion, even if the underlying tortious act was intentional, insurance coverage might exist if the harm was not expected or intended by the insured. In other words, the fact that a complaint includes allegations of intentional conduct does not necessarily result in a finding of no "accident" covered by the Policy, or a finding of bodily injury expected or intended by the insured that is excluded under the Policy.

761 (S.D.1989). In *Pickering,* the Court stated that South Dakota law "already provides a remedy for this type of claim in the form of an action against the paramour for alienation of affections." *Id.*

 Secondly, the elements of intentional infliction of emotional distress under South Dakota law prohibit it from meeting the definition of a "loss" as an accident resulting in bodily injury under the policy at issue here. To be liable for intentional infliction of emotional distress, a defendant must have either intended to cause the plaintiff severe emotional distress or the defendant must have recklessly caused the plaintiff severe emotional distress. *See* South Dakota Civil Pattern Jury Instruction 145–01. "In order to find that the defendant recklessly caused the plaintiff severe emotional distress, you must find that the defendant deliberately disregarded a high degree of probability that emotional distress would result from the conduct." South Dakota Civil Pattern Jury Instruction 145–03. With the first element of a claim for intentional infliction of emotional distress, a claim exists only if the tortfeasor's conduct is so "extreme and outrageous" as to exceed "all bounds of decency usually tolerated by a civilized society." South Dakota Civil Pattern Jury Instruction 145–06. It is conduct "that would cause a reasonable member of the community to immediately react in outrage." *Id.* There is not much behavior that is so outrageous and extreme that it would cause a reasonable member of the community to immediately react in outrage, yet an insured could plausibly claim in some situations that he intended and expected no harm to the claimant. This case is not one of those situations. Adultery was decriminalized in South Dakota in 1976. The cause of action for alienation of affections exists not by statute in South Dakota, but by common law. The conduct alleged here, although morally wrong, is not so "extreme and outrageous" as to

"exceed all bounds of decency usually tolerated by a civilized society." For all of these reasons, the Court holds that Baar's intentional infliction of emotional distress claim does not trigger State Farm's duty to defend under the Policy.

### 3. Negligent Infliction of Emotional Distress

 Pins argues that if he did not intend or expect to injure Baar, Baar's negligence claim is covered under the Policy. State Farm contends that Baar's negligence claim is a "transparent attempt to trigger insurance coverage." This Court finds that the South Dakota Supreme Court's holding in *Pickering* which precludes an action for intentional infliction of emotional distress applies equally to a claim for negligent infliction of emotional distress when it is predicated on conduct which leads to the dissolution of a marriage. *Pickering,* 434 N.W.2d at 761. South Dakota law "already provides a remedy for this type of claim in the form of an action against the paramour for alienation of affections." *Id.*

### B. State Farm's Duty to Indemnify

Because the parties settled the underlying case, a jury did not decide whether Pins was liable to Baar, or whether Pins' actions constituted alienation of affections, intentional infliction of emotional distress or negligent infliction of emotional distress. The Release signed by the parties did not limit the settlement to a specific cause of action. Accordingly, State Farm must indemnify Pins for the entire amount of the settlement.

### C. Remaining Claims

 In addition to the claims asserted in Counts I and V of the Complaint in this case, on which Pins is entitled to summary judgment, Pins alleges claims for bad faith

(Count II), punitive damages (Count III), and attorney fees pursuant to SDCL § 58–12–3 for vexatious refusal to defend and indemnify him (Count IV). No motions are pending on these claims, but the Court notes that, at this stage in the proceedings, the record does not support a bad faith claim and, accordingly, there could be no punitive damages. Punitive damages are a type of damage and are not a separate cause of action so there really is no Count III. In addition, with the questions of duty to defend and the duty to provide coverage for alienation of affections having been unsettled law in South Dakota, there is no basis for recovery under SDCL § 58–12–3.

## CONCLUSION

There are no disputed issues of material fact regarding whether, under the Policy, State Farm had a duty to defend and to indemnify Pins in the underlying lawsuit. Because State Farm has not shown that the alienation of affections claim asserted in Baar's lawsuit clearly fell outside the Policy's coverage, Pins is entitled to summary judgment on these coverage issues. Accordingly,

IT IS ORDERED:

(1) that Pins' motion for partial summary judgment is granted as to Counts I and V of the Complaint regarding State Farm's duties to defend and indemnify;

(2) that State Farm's motion for judgment on the pleadings is denied;

(3) that Pins may, within twenty (20) days of the date of this order, submit to this Court either a stipulation of damages for the cost of Pins' defense, agreed to by both parties to this action, or documentary evidence in support of his claim for such damages; and

(4) that if Pins provides the Court with documentary evidence of its claim for damages, State Farm shall have

twenty (20) days from receipt of Pins' submission within which to file a response. Pins shall then have ten (10) days after receipt of State Farm's response within which to file a reply.